*C8 - 1109*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 5 2008

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**JJ**

**FILED**

IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE
LENDING PRACTICES LITIGATION

**AUGUST 12, 2008**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Francis Whratee Nyepon v. WM Specialty Mortgage, LLC,            )
et al., D. Massachusetts, Bky. Advy. No. 1:08-1109 )            )            *MDL No. 1715*

## ORDER LIFTING STAY OF CONDITIONAL TRANSFER ORDER

A conditional transfer order was filed in this action (*Nyepon*) on June 30, 2008. Prior to expiration of that order's 15-day stay of transmittal, a defendant in *Nyepon*, WM Specialty Mortgage, LLC, filed a notice of opposition to the proposed transfer. Defendant subsequently failed to file the required motion and brief to vacate the conditional transfer order.

IT IS THEREFORE ORDERED that the stay of the Panel's conditional transfer order designated as "CTO-46" filed on June 30, 2008, is LIFTED insofar as it relates to this action. The action is transferred to the Northern District of Illinois for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 being conducted by the Honorable Marvin E. Aspen.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Certified to be a true and
correct copy of the original
James M. Lynch, Clerk
U.S. Bankruptcy Court
District of Massachusetts

By: _____
Deputy Clerk

Date: 8/14/08

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C.  20002

Telephone: [202] 502-2800
Fax:            [202] 502-2888
http://www.jpml.uscourts.gov

August 5, 2008

Michael W. Dobbins, Clerk
Everett McKinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, IL 60604

Re:  MDL No. 1715 -- IN RE: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation

　　　Francis Whratee Nyepon v. WM Specialty Mortgage, LLC, et al., D. Massachusetts,
　　　Bky. Advy. No. 1:08-1109

Dear Mr. Dobbins:

　　　A conditional transfer order was filed in the above matter on <u>June 30, 2008</u>.  Prior to the expiration of that order's 15-day stay, opposition to the proposed transfer was filed and, pursuant to Rule 7.4(c) of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435 (2001), the conditional transfer order was stayed until further order of the Panel.  The opposition has now been withdrawn and I am therefore enclosing a certified copy and one additional copy of today's order lifting the stay of the conditional transfer order and transferring the action to your district pursuant to 28 U.S.C. § 1407.  The order is directed to you for filing.

　　　A list of involved counsel is attached.

　　　　　　　　　　　　　　Very truly,

　　　　　　　　　　　　　　Jeffery N. Lüthi
　　　　　　　　　　　　　　Clerk of the Panel

　　　　　　　　　　　By _Tanisha Spinner_
　　　　　　　　　　　　　　Tanisha Spinner
　　　　　　　　　　　　　　Deputy Clerk

Enclosures

cc:　　Transferee Judge:  Judge Marvin E. Aspen
　　　　Transferor Judge:  Judge William C. Hillman
　　　　Transferor Clerk:  James M. Lynch

JPML Form 68

IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE
LENDING PRACTICES LITIGATION

MDL No. 1715

## INVOLVED COUNSEL LIST

David D. Christensen
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

Bernard E. LeSage
BUCHALTER NEMER PC
1000 Wilshire Blvd.
Suite 1500
Los Angeles, CA 90017-2457

Jeffrey B. Loeb
RICH MAY PC
The Weld Building
176 Federal Street
6th Floor
Boston, MA 02110

Marvin Allen Miller
MILLER LAW LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603

Saul M. Ostroff
LAW OFFICES OF SAUL M OSTROFF
24 Union Avenue
#5
Framingham, MA 01702

Dominic J. Rizzi
FAUCHER & CAFFERTY
30 N. LaSalle Street
Suite 3200
Chicago, IL 60602

Thomas J. Wiegand
WINSTON & STRAWN LLP
35 West Wacker Drive
45th Floor
Chicago, IL 60601

**NTCAPR, TRANSFER, CLOSED**

# United States Bankruptcy Court
# District of Massachusetts (Boston)
# Adversary Proceeding #: 08-01109
## Internal Use Only

*Assigned to:* Judge William Hillman
*Related BK Case:* 07-14909
*Related BK Title:* Francis Whratee Nyepon
*Related BK Chapter:* 13
*Demand:*

*Date Filed:* 04/21/08
*Date Terminated:* 08/14/08

*Nature[s] of Suit:*
  14 Recovery of money/property - other
  21 Validity, priority or extent of lien or other interest in property
  91 Declaratory judgment

## Plaintiff

-----------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

represented by **Saul M. Ostroff**
Law Offices of Saul M. Ostroff
24 Union Avenue (#5)
Framingham, MA 01702
(508) 626-7600

V.

## Defendant

-----------------------

**WM Speciality Mortgage, LLC**

represented by **Andrew C. Glass**
K&L Gates LLP
State Street Financial Center
One Lincoln St.
Boston, MA 02111
617-261-3107
Fax : 617-261-3175
Email: andrew.glass@klgates.com

**David D. Christensen**



Certified to be a true and
correct copy of the original
James M. Lynch, Clerk
U.S. Baukruptcy Court
District of Massachusetts
By:
          Deputy Clerk
Date: 8/14/08

K&L Gates LLP
State Street Financial Ctr.
One Lincoln Street
Boston, MA 02111
617-261-3100
Email:
david.christensen@klgates.com

**Gregory N. Blase**
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-9059
Email: gregory.blase@klgates.com

**R. Bruce Allensworth**
Kirkpatrick & Lockhart Preston
Gates Ell
State Street Financial Ctr
One Lincoln Street
Boston, MA 02111
617-261-3100
Email:
bruce.allensworth@klgates.com

**Town and Country Credit Corp.**    represented by **Andrew C. Glass**
(See above for address)

**David D. Christensen**
(See above for address)

**Gregory N. Blase**
(See above for address)

**Phoebe S. Winder**
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-3196
Email:
phoebe.winder@klgates.com

**R. Bruce Allensworth**
K&L Gates LLP
State Street Financial Ctr
One Lincoln Street
Boston, MA 02111

617-261-3100
Email:
bruce.allensworth@klgates.com

**AMC Mortgage Services**    represented by **Andrew C. Glass**
(See above for address)

**David D. Christensen**
(See above for address)

**Gregory N. Blase**
(See above for address)

**Phoebe S. Winder**
(See above for address)

**R. Bruce Allensworth**
(See above for address)

**Counter-Claimant**
-----------------------

**WM Speciality Mortgage, LLC**    represented by **WM Speciality Mortgage, LLC**
PRO SE

V.

**Counter-Defendant**
-----------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

**Counter-Claimant**
-----------------------

**Town and Country Credit Corp.**

V.

**Counter-Defendant**
-----------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

**Counter-Claimant**

-------------------------

**AMC Mortgage Services**

V.

**Counter-Defendant**

-------------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

**Counter-Claimant**

-------------------------

**Town and Country Credit Corp.**

V.

**Counter-Defendant**

-------------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

**Counter-Claimant**

-------------------------

**AMC Mortgage Services**

V.

**Counter-Defendant**

-------------------------

**Francis Whratee Nyepon**
31 Mather St.
Dorchester, MA 02124
SSN: 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

| Filing Date | # | Docket Text |
|-------------|---|-------------|
| 04/21/2008 | ●1 | Adversary case 08-01109. Complaint by Francis Whratee Nyepon against WM Speciality Mortgage, LLC . Fee Amount $250 Receipt Number 612873 Nature of Suit(14 (Recovery of money/property - other))(21 (Validity, priority or extent of lien or other interest in property))(91 (Declaratory judgment))(mjl, USBC) (Entered: 04/21/2008) |
| 04/23/2008 | ●2 | Summons Issued on AMC Mortgage Services, Answer Due 5/23/2008; Town and Country Credit Corp., Answer Due 5/23/2008; WM Speciality Mortgage, LLC., Answer Due 5/23/2008. (aek, USBC) (Entered: 04/23/2008) |
| 04/23/2008 | ●3 | Court Certificate of Mailing RE: 2 Summons Issued (aek, USBC) (Entered: 04/23/2008) |
| 05/23/2008 | ●4 | Answer to Complaint with certificate of service, Counterclaim by WM Speciality Mortgage, LLC against Francis Whratee Nyepon filed by WM Speciality Mortgage, LLC. (Loeb, Jeffrey) (Entered: 05/23/2008) |
| 05/23/2008 | ●5 | Notice of Appearance and Request for Notice by Dudley Goar with certificate of service. filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Goar, Dudley) (Entered: 05/23/2008) |
| 05/23/2008 | ●6 | Assented to Motion filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. to Extend time to file Answer to Complaint with certificate of service filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Goar, Dudley) (Entered: 05/23/2008) |
| 05/27/2008 | ●7 | Order Dated 5/27/08 Re: 6 Assented to Motion filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. to Extend time to File Answer to Complaint. GRANTED: THE TIME IS EXTENDED TO JUNE 6, 2008. (bg, usbc) (Entered: 05/27/2008) |
| 05/29/2008 | ●8 | BNC Certificate of Mailing - PDF Document. RE: 7 Order on Motion to Extend Service Date 05/29/2008. (Admin.) (Entered: 05/30/2008) |

| 06/06/2008 | ●9 | Notice of Appearance and Request for Notice by R. Bruce Allensworth with certificate of service. filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Allensworth, R.) (Entered: 06/06/2008) |
|---|---|---|
| 06/06/2008 | ●10 | Notice of Appearance and Request for Notice by Phoebe S. Winder with certificate of service. filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Winder, Phoebe) (Entered: 06/06/2008) |
| 06/06/2008 | ●11 | Notice of Appearance and Request for Notice by Gregory N. Blase with certificate of service. filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Blase, Gregory) (Entered: 06/06/2008) |
| 06/06/2008 | ●12 | Answer to Complaint with certificate of service filed by AMC Mortgage Services. (Winder, Phoebe) (Entered: 06/06/2008) |
| 06/06/2008 | ●13 | Answer to Complaint with certificate of service filed by Town and Country Credit Corp.. (Winder, Phoebe) CORRECTIVE ENTRY: Incorrect Title on the Pleading. Attorney to Refile Electronically. Modified on 6/9/2008 (dk, USBC). (Entered: 06/06/2008) |
| 06/06/2008 | ●14 | Notice of Appearance and Request for Notice by Dudley Goar with certificate of service. filed by Defendant WM Speciality Mortgage, LLC, Counter-Claimant WM Speciality Mortgage, LLC (Goar, Dudley) (Entered: 06/06/2008) |
| 06/06/2008 | ●15 | Notice of Withdrawal of Appearance of Attorney Dudley C. Goar for Defendants AMC Mortgage Services, Town and Country Credit Corp. With Certificate of Service. (Goar, Dudley) CORRECTIVE ENTRY: Edited to indicate filing of Certificate of Service. Text modified to more accurately describe document. Modified on 6/9/2008 (ndl, USBC). (Entered: 06/06/2008) |
| 06/06/2008 | | Attorney Dudley Goar for WM Speciality Mortgage, LLC added to case (ndl, USBC) (Entered: 07/28/2008) |

| 06/09/2008 | ●16 | Answer to Complaint with certificate of service filed by Town and Country Credit Corp.. (Winder, Phoebe) (Entered: 06/09/2008) |
|---|---|---|
| 06/12/2008 | ●17 | Notice of Appearance Of David D. Christensen with certificate of service Filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Christensen, David) CORRECTIVE ENTRY: Incorrect event code used. This should have been docketed using the event code Notice of Appearance which is listed under Other. Modified on 6/13/2008 (ndl, USBC). (Entered: 06/12/2008) |
| 06/26/2008 | ●18 | Notice of Appearance and Request for Notice by Andrew C. Glass with certificate of service. filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Glass, Andrew) (Entered: 06/26/2008) |
| 06/26/2008 | ●19 | Town and Country Credit Corp.'s Amended 16 Answer and Counterclaim to 1 Plaintiff's Complaint. With Certificate of Service. (Blase, Gregory) CORRECTIVE ENTRY: Created linkage to #16 and modified text to include filing of Certificate of Service and more accurately describe document. Modified on 6/27/2008 (ndl, USBC). (Entered: 06/26/2008) |
| 06/26/2008 | ●20 | AMC Mortgage Services, Inc.'s Amended 12 Answer and Counterclaim to Plainitiff's 1 Complaint. With Certificate of Service. (Blase, Gregory) CORRECTIVE ENTRY: Created linkage to #12 and modified text to indicate filing of Certificate of Service and more accurately describe document. Modified on 6/27/2008 (ndl, USBC). (Entered: 06/26/2008) |
| 06/27/2008 | ●21 | Town and Country Credit Corp.'s Amended 19 Answer and Counterclaim to Plaintiff's 1 Complaint. With Certificate of Service (Blase, Gregory) CORRECTIVE ENTRY: Created linkage to #19 and modified text to more accurately describe document. Incorrect event code used. This should have been docketed using the event Amended Document. Modified on 6/27/2008 (ndl, USBC). (Entered: 06/27/2008) |
| 06/27/2008 | ●22 | AMC Mortgage Services, Inc.,'s Amended 20 Answer and |

| | | |
|---|---|---|
| | | Counterclaim to Plaintiff's <u>1</u> Complaint. With Certificate of Service. (Blase, Gregory) CORRECTIVE ENTRY: Created linkage to #20 and modified text to more accurately describe document. Incorrect event code used. This should have been docketed using the event Amended Document. Modified on 6/27/2008 (ndl, USBC). (Entered: 06/27/2008) |
| 06/27/2008 | ●<u>23</u> | Pre-Trial Conference set for 7/17/2008 at 12:00 PM at Boston Courtroom 3 - WCH. (rmb, USBC) (Entered: 06/27/2008) |
| 06/29/2008 | ●<u>24</u> | BNC Certificate of Mailing - Hearing. RE: <u>23</u> Hearing Scheduled Service Date 06/29/2008. (Admin.) (Entered: 06/30/2008) |
| 06/30/2008 | ●<u>27</u> | CONDITIONAL TRANSFER ORDER DATED 6/30/08 FROM THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION Re: <u>1</u> Complaint filed by Plaintiff Francis Whratee Nyepon. See Conditional Transfer Order for complete text. (aek, USBC) (Entered: 07/14/2008) |
| 07/11/2008 | ●<u>25</u> | Notice *of Firm Name Change* with certificate of service. Filed by Defendants AMC Mortgage Services, Town and Country Credit Corp. (Christensen, David) (Entered: 07/11/2008) |
| 07/11/2008 | ●<u>26</u> | Joint Motion filed by Defendants WM Specialty Mortgage, LLC, AMC Mortgage Services, Town and Country Credit Corp., and Plaintiff Francis Wharatee Nyepon for Continuance of Pre-Trial Conference. Re: <u>1</u> Complaint. With Certificate of Service (Attachments: # <u>1</u> Proposed Order) (Christensen, David) CORRECTIVE ENTRY: Added defendant WM Specialty Mortgage, LLC as party-filer of document. Created linkage to #1 Complaint. Modified on 7/11/2008 (ndl, USBC). CORRECTIVE ENTRY: Added Plaintiff Francis Whratee Nyepon as party-file of document. Modified on 7/11/2008 (ndl, USBC). (Entered: 07/11/2008) |
| 07/14/2008 | ●<u>28</u> | Order Dated 7/14/2008 Re: <u>26</u> Joint Motion filed by Defendants WM Specialty Mortgage, LLC, AMC Mortgage |

| | | |
|---|---|---|
| | | Services, Town and Country Credit Corp., and Plaintiff Francis Wharatee Nyepon for Continuance of Pre-Trial Conference. THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION HAVING ENTERED A CONDITIONAL TRANSER ORDER AS TO THIS ADVERSARY PROCEEDING, CONDITIONALLY TRANSFERRING THE ADVERSARY PROCEEDING U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, THE PRETRIAL CONFERENCE CURRENTLY SCHEDULED HEREIN FOR JULY 17, 2008, IS HEREBY CONTINUED GENERALLY. ON OR BEFORE SEPTEMBER 15, 2008, THE PARTIES SHALL FILE A JOINT STATUS REPORT REGARDING THE STATUS OF THE CONDITIONAL TRANSFER ORDER. (ndl, USBC) (Entered: 07/14/2008) |
| 07/16/2008 | ●29 | BNC Certificate of Mailing - PDF Document. RE: 27 Order Service Date 07/16/2008. (Admin.) (Entered: 07/17/2008) |
| 07/16/2008 | ●30 | BNC Certificate of Mailing - PDF Document. RE: 28 Order on Motion to Continue/Cancel Hearing, , Service Date 07/16/2008. (Admin.) (Entered: 07/17/2008) |
| 07/25/2008 | ●31 | Notice of Appearance filed by Defendant WM Speciality Mortgage of R. Bruce Allensworth for Defendant WM Speciality Mortgage, LLC. With Certificate of Service. (Allensworth, R.) CORRECTIVE ENTRY: Incorrect event code used. This should have been docketed using the event code Notice of Appearance listed under Other. Modified on 7/25/2008 (ndl, USBC). (Entered: 07/25/2008) |
| 07/25/2008 | ●32 | Notice of Appearance filed by Defendant WM Speciality Mortgage of Gregory N. Blase for Defendant WM Speciality Mortgage, LLC. With Certificate of Service. (Blase, Gregory) CORRECTIVE ENTRY: Incorrect event code used. This should have been docketed using the event code Notice of Appearance listed under Other. Modified on 7/25/2008 (ndl, USBC). (Entered: 07/25/2008) |
| 07/25/2008 | ●33 | Notice of Appearance filed by Defendant WM Speciality Mortgage of David D. Christensen for Defendant WM |

| | | |
|---|---|---|
| | | Speciality Mortgage, LLC. With Certificate of Service. (Christensen, David) CORRECTIVE ENTRY: Incorrect event code used. This should have been docketed using the event code Notice of Appearance listed under Other. Modified on 7/25/2008 (ndl, USBC). (Entered: 07/25/2008) |
| 07/25/2008 | ●34 | Notice of Withdrawal of Appearance/Representation *of Dudley C. Goar*. Filed by Defendant WM Speciality Mortgage, LLC, Counter-Claimant WM Speciality Mortgage, LLC (Goar, Dudley) (Entered: 07/25/2008) |
| 07/25/2008 | ●35 | Notice of Appearance and Request for Notice by Andrew C. Glass with certificate of service. filed by Defendant WM Speciality Mortgage, LLC (Glass, Andrew) (Entered: 07/25/2008) |
| 07/28/2008 | | Terminated Attorney Dudley Goar (ndl, USBC) (Entered: 07/28/2008) |
| 07/28/2008 | | Terminated Attorney Dudley Goar for defendant, WM Specialty Mortgage. (ndl, USBC) (Entered: 07/28/2008) |
| 08/01/2008 | ●36 | Notice of Withdrawal of Appearance/Representation *of Jeffrey B. Loeb for WM Specialty Mortgage, LLC*. Filed by Defendant WM Speciality Mortgage, LLC, Counter-Claimant WM Speciality Mortgage, LLC (Loeb, Jeffrey) (Entered: 08/01/2008) |
| 08/04/2008 | | Terminated Attorney Jeffrey B. Loeb for WM Specialty Mortgage, LLC. (ndl, USBC) (Entered: 08/04/2008) |
| 08/05/2008 | ●37 | Assented To Motion filed by Defendant WM Speciality Mortgage, LLC for Leave to File Amended Answer and Counterclaim with certificate of service filed by Defendant WM Speciality Mortgage, LLC (Attachments: # 1 Exhibit A) (Christensen, David) (Entered: 08/05/2008) |
| 08/08/2008 | ●38 | Notice of ORDER DATED 8/5/2008 OF THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION LIFTING STAY OF CONDITIONAL TRANSFER ORDER. RE: 1 Complaint, 27 Order. See Order for complete text. (ndl, USBC) CORRECTIVE |

| | | |
|---|---|---|
| | | ENTRY: Corrected PDF Image of Order. Modified on 8/12/2008 (ndl, USBC). (Entered: 08/12/2008) |
| 08/12/2008 | ●39 | Order of Closure Dated 8/12/2008 Re: 1 Complaint. IN VIEW OF THE ORDER LIFTING STAY OF CONDITIONAL TRANSFER ORDER, ENTERED BY THE U.S. JUDICIAL PANEL ON MULTIDISTRICT LITIGATION ON AUGUST 5, 2008, IT NOW APPEARS THAT THIS ADVERSARY PROCEEDING HAS BEEN FINALLY TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. ACCORDINGLY, THIS COURT'S PREVIOUS ORDER TO FILE A STATUS REPORT ON OF BEFORE SEPTEMBER 15, 2008, IS HEREBY VACATED; THE ASSENTED-TO MOTION BY WM SPECIALITY MORTGAGE, LLC FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM IS DENIED WITHOUT PREJUDICE TO ITS REFILING IN THE NORTHERN DISTRICT OF ILLINOIS; AND THE DOCKET OF THE ADVERSARY PROCEEDING IN THIS COURT MAY BE AND HEREBY IS CLOSED. (ndl, USBC) (Entered: 08/13/2008) |
| 08/13/2008 | ●40 | Court Certificate of Mailing. RE: 39 Order (ndl, USBC) (Entered: 08/13/2008) |
| 08/14/2008 | ●41 | Letter of Transmittal Transferring Case To Northern District of Illinois. (mem, USBC) (Entered: 08/14/2008) |
| 08/14/2008 | ● | Disposition of Adversary. Adversary Number 08-1109 Transferred Complaint (mem, USBC) (Entered: 08/14/2008) |
| 08/14/2008 | ● | Adversary Case 08-1109 Closed (mem, USBC) (Entered: 08/14/2008) |

FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|

| PLAINTIFFS<br>Francis W. Nyepon | DEFENDANTS<br>**WM Specialty Mortgage, LLC**<br>**Town and Country Credit Corp.**<br>**AMC Mortgage Services** |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Saul Ostroff, Esq.<br>Ostroff and Ostroff<br>24 Union Street, Ste. 6<br>Framingham, MA  01702 | ATTORNEYS (If Known)<br>Julie Ranieri, Esq.<br>Korde & Associates<br>321 Billerica Road, Ste, 210<br>Chelmsford, MA  01824-4100 |
|---|---|

| PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)

The Defendant, AMC Mortgage Service ("AMC") has filed a secured Proof of Claim dated August 27, 2007 in the amount of $491,280.23.  On or about October 11, 2007 , the Debtor delivered a Notice of Rescission to AMC.  On September 7, 2007, the Debtor filed a Chapter 13 Plan indicating he was going to rescind the mortgage.  On September 20, 2007, AMC delivered a response denying the Debtor's rescission request.  This Adversary Complaint seeks to serve as an objection to the Proof of Claim filed by AMC and to assert the Debtor's claims against AMC for 93A violation and Truth in Lending related violations.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ 3 ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ 2 ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §303(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - reinstatement of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ 1 ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>Francis Whratee Nyepon | BANKRUPTCY CASE NO.<br>07-14909-RS |

| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISIONAL OFFICE<br>Eastern | NAME OF JUDGE<br>Somma |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

/s/

| DATE 4/21/08 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Saul M. Ostroff |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of the court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

Parties. Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

Signature. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>FRANCIS WHRATEE NYEPON,<br><br>Debtor. | CHAPTER  13<br>CASE NO.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br>DEBTOR,<br>                Plaintiff,<br><br>VS.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY<br>CREDIT CORP. and<br>AMC MORTGAGE SERVICES,<br>                Defendants. | ADVERSARY PROCEEDING<br>NO.<br><br><br><br>COMPLAINT |

I.      SUMMARY

The Defendant, AMC Mortgage Services ("AMC") has filed a secured Proof of Claim dated August 27, 2007 in the amount of $491,280.23.  (A copy of the Proof of Claim with exhibits is attached as Exhibit "A".)  On or about October 11, 2007, the Debtor delivered a Notice of Rescission to AMC.  (A copy of the Notice is attached hereto as Exhibit "B".)  On September 7, 2007, the Debtor filed a Chapter 13 Plan indicating he was going to rescind the mortgage.  (A copy of the Chapter 13 Plan is attached hereto as Exhibit "C").  On September 20, 2007, AMC delivered a response denying the Debtor's rescission request.  (A copy of this response is attached hereto as Exhibit "D".)  This Adversary Complaint seeks to serve as an objection to the Proof of Claim filed by AMC and to assert the Debtor's claims against AMC, WM Specialty Mortgage, LLC, and Town and Country Credit Corp., for 93A violations and Truth in Lending related violations.

1

## II.    PARTIES

1.      The Plaintiff, Francis (Whratee) Nyepon (the "Debtor") filed a Chapter 13 Bankruptcy on August 6, 2007.  He resides at 29-31 Mather Street, Dorchester, MA  02124 (the "Property"). The Debtor and his non-debtor wife, Ellen Nyepon ("Mrs. Nyepon"), were at all times material hereto the owners of the Property.  They reside there with their three minor children.

2.      The Defendant, Town and Country Credit Corp. (hereinafter "T&C"), upon information and belief, is a subsidiary of Ameriquest Mortgage, is engaged in the granting of mortgages on residential properties, with a business address of 2010 Main Street, Ste. 800, Irvine, CA  92614. Town and Country also had a business address at 300 Granite Street, Ste. 205, Braintree, MA  02184.

3.      The Defendant, WM Specialty Mortgage LLC (herein "WM"), upon information and belief, is the current holder of the mortgage with a business address of _____

4.      The Defendant, AMC Mortgage Services ("AMC") is the current servicer of the mortgage with a business address of 1100 Town and Country Road, Orange, CA  92868.

## III.    JURISDICTION

This proceeding is a core proceeding pursuant to the provisions of 28 U.S.C. Section 157(b)(1); and Sections 157 (b)(2), (B), (C), (K), (L) and (O).

## IV.    FACTS

1.      Sometime in 2004, the Debtor applied to T&C for a residential mortgage with favorable terms and conditions.

2.      Prior to the closing, the Debtor had to travel to Liberia.

3.      On September 21, 2004, while the Debtor was still in Liberia, an attorney for T&C conducted the closing at the Adams Street Library in Dorchester, MA.

4.      Only Mrs. Nyepon was present at the closing.

5.      The attorney for T&C, Jonathan P. Ash, witnessed Mrs. Nyepon's signing of a note dated September 2004 ("Note") and notarized her signature on the mortgage dated September 21, 2004 securing the Property. ("Mortgage").  (A copy of the Note and recorded Mortgage is attached hereto as Exhibits "E" and "F".)

6.      Pursuant to the terms of the Note, the Note called for an adjustable rate of 8.850%.

7.      At the time, the Debtor had a lower rate of interest.

8.      The Debtor was never advised of said interest rate, or that it would be adjustable, prior to his leaving for Liberia.

9.      The Debtor did not give Mrs. Nyepon a Power of Attorney.

10.      After Mrs. Nyepon left the library, she was contacted on her cell phone by the mortgage broker who informed her that she needed to sign the Debtor's name to the documents.

11.      Mrs. Nyepon pulled over; the mortgage broker delivered the documents to her; and she signed the Debtor's name in the presence of the mortgage broker.

12.      The Debtor did not receive a copy of the three (3) day right of rescission notice.

13.      The Debtor did not learn of the terms of the Note until he returned from Liberia.

14.      At that time, the Debtor contacted T&C to rescind the Note.  When the Debtor advised them that he did not sign the Note or Mortgage, their representative threatened to throw his wife in jail for forgery.

3

15.     Pursuant to the terms of the Note, the interest rate was subject to change on October 1, 2006. The first change was capped at 2%; with subsequent increases capped at 1%. The maximum was 14.850%.

16.     On or about June 16, 2006, T&C assigned its mortgage and note to WM.

17.     Sometime thereafter the Debtor realized that he could not afford to pay the mortgage due to the increase in the interest rate which was not disclosed to him.

18.     On May 10, 2007, WM served a thirty day notice of default upon the Debtor.

19.     On August 6, 2007, the Debtor had no option but to file a Chapter 13 Bankruptcy to stay the foreclosure sale, scheduled for August 8, 2007.

COUNT I
(Violation of Chapter 93A)

20.     The Debtor repeats and realleges the allegations contained in Paragraphs 1 through 19 above.

21.     The Debtor applied to T&C for a residential mortgage with favorable terms and conditions.

22.     At the time and place for the mortgage signing, T&C willfully and knowingly produced a mortgage upon less favorable terms and conditions and without prior disclosure. That said action employed by T&C constitutes a "Bait and Switch" and is a violation of M.G.L. Chapter 93A.

23.     T&C knew, or should have known, that Nyepon could not afford to repay the mortgage after the rate began to increase.

24.     T&C failed to explain any of the mortgage terms to the Debtor.

4

25.     T&C failed to give any closing documents, which would have included a H.U.D., a truth in lending statement, and a right to cancel to the Debtor, as required by law.

26.     That the failure of T&C to provide these documents were and are detrimental to the Debtor and in violation of the requirements of the Federal Truth in Lending laws.

27.     That the violation of Federal Truth in Lending laws are on their face a violation of M.G.L. chapter 93A.

28.     Upon returning from Liberia, the Debtor returned his Mortgage and Note to the Defendant, T&C.

29.     T&Cs' threats, regarding the Debtor's spouse, constituted violations of the M.G.L. Chapter 93A.

WHEREFORE, the Debtor seeks the following relief:

1.     This Court enter an order declaring that the Defendants' actions outlined in this Complaint violated M.G.L. Ch. 93A, Sec.2.

2.     That this Court award the Debtor damages for actual damages, costs and attorney's fees.

3.     That this Court enter damages based on emotional distress.

4.     That this Court enter an order declaring that the Defendants' actions and practices were a willful or knowing violation of M.G.L. Ch. 93A.

5.     That this Court enter an order declaring that the Defendants' failure to grant relief upon receipt of the Debtor's 93A demand was made in bad faith with knowledge or reason to know that the act or practice complained of in this Complaint violated M.G.L. Ch. 93A.

6.    That this Court enter an order that the Defendants pay treble damages pursuant to M.G.L. Ch. 93A Sec. 9(3).

7.    Such other and further relief as is meet and proper and as justice may require.

COUNT II

(Truth in Lending Action and/or MCCDA Violations)

30.    The Debtor repeats and realleges the allegations contained in Paragraphs 1 through 29 above.

31.    That the failure by T&C to provide a right to cancel is in violation of 15 U.S.C. Sec. 1635, Regulation Z, 12 C.F.R. Sec.226.23 and it's Massachusetts counterpart.

32.    The failure of T&C to deliver any disclosures to the Debtor including "two copies of his right to cancel is in violation of 15 U.S.C. Section 1635 Regulation Z, 12 C.F.R. and its Massachusetts counterpart..

WHEREFORE, the Debtor requests that this Honorable Court enter judgment in favor or the Plaintiff Nyepon and against the Defendants Town &Country, WM Specialty Mortgage, LLC and AMC Mortgage Services as follows:

1.    This Court enter an order declaring that the Defendants' actions outlined in this Complaint violated 15 U.S.C. Sec. 1635.

2.    This Court enter an order declaring that the Defendants' actions outlined in this Complaint violated M.G.L. Ch 140D.

3.    Enter an Order that the Defendants' actions outlined in this Complaint violated 12 U.S.C. Sec. 2603;

4.    Enter an Order that the Defendants' actions outlined in this Complaint violated 15 U.S.C. §1638;

5.    Enter a declaration that the Plaintiff Nyepon is entitled to rescind his mortgage;

6.    Rescission of the loan;

7.    Statutory damages;

8.    Attorney's fees, litigation expenses and costs; and

9.    Such other relief this Honorable Court deems just and proper.

## COUNT III

(Objection to Proof of Claim)

33    The Debtor repeats and realleges the allegations contained in Paragraphs 1 through 32.

34    The above referenced facts and claims are grounds for objecting to ASC's proof of claim.

WHEREFORE, the Debtor requests this Honorable Court:

1    Enter an order that the objection to the proof or claim is sustained, and that AMC holds an unsecured claim in an amount to be determined by the Court.

2.    Such other relief this Honorable Court deems just and proper.


FRANCIS WHRATEE NYEPON
By his Attorneys,
OSTROFF AND OSTROFF

By:___/s/Saul Ostroff_____
    SAUL M. OSTROFF (BBO 380715)
    24 UNION AVENUE, STE. 6
    FRAMINGHAM, MA  01702
    (508) 626-7600

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 13 |
|  | ) |  |
| FRANCIS WHRATEE NYEPON, | ) | Bankruptcy Case No 07-14909-RS |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| DEBTOR | ) |  |
|  | ) |  |

<u>SUMMARY OF EXHIBITS</u>

The following exhibit(s) pertain to the Proof of Claim filed by Attorneys for AMC Mortgage Services,

Inc. as loan servicer for Secured Creditor Town and Country Credit Corporation

on ___8|28|07___ :

    1. Promissory Note

    2. Deed of Trust

    3. Certificates of Assistant Secretary.

_Nancy Swift_
Nancy K. Swift, Esq (Arizona Bar No. 014910)
Robert P. Rutila, Esq (Arizona Bar No. 019977)
Christopher R. McCarthy, Esq (Arizona Bar No. 023349)
BUCHALTER NEMER, A Professional Corporation
16435 North Scottsdale Road Suite 440
Scottsdale AZ. 85254-1754
Telephone: (480) 383-1800
Facsimile: (480) 824-9400

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the Proof of Claim and all exhibits listed
above were deposited in the United States mail, first class, postage prepaid, on __8|28|07__
addressed to the following:

| <u>Debtor</u> | <u>Attorney for Debtor</u> | <u>Chapter 13 Trustee</u> |
|---|---|---|
| Francis Whratee Nyepon | Areya Holder Pronske | Carolyn Bankowski |
| 31 Mather Street | 800 W. Airport Freeway Suite | P.O. Box 8250 |
| Dorchester, MA 02124 | 1100 | Boston, MA 02114 |
|  | Irving, TX 75062 |  |

_Misty Whie_
(Print name)

_Misty White_
(Signature)

Service List
In re Francis Whratee Nyepon
Case No. 07-14909-RS

Debtor:
Francis Whratee Nyepon
31 Mather Street
Dorchester, MA 02124

Counsel for Debtor:
Areya Holder Pronske
800 W. Airport Freeway Suite 1100
Irving, TX 75062

Chapter 13 Trustee:
Carolyn Bankowski
P.O. Box 8250
Boston, MA 02114

Addendum "A"
In re Francis Whralee Nyepon
Bankruptcy Case No. 07-14909-RS

As of the date of filing of the within bankruptcy case on August 6, 2007, there were arrearages due and owing as follows:

| | |
|---|---|
| 1 payment at $4,724.66 each<br>( February 1, 2007 ) | $4,724.66 |
| 2 payments at $4,861.72 each<br>( March 1, 2007 through April 1, 2007 ) | $9,723.44 |
| 4 payments at $5,197.36 each<br>( May 1, 2007 through August 1, 2007 ) | $20,789.44 |
| Previously Accured Late Charges | $1,168.49 |
| Foreclosure Fees and Costs | $5,598.63 |
| Appraisal | $9.75 |
| Suspense Balance | $1,354.10 |
| Total Arrears | $40,660.31 |
| Principal Balance | $450,619.92* |
| Total Debt | $491,280.23 |

* The payments in arrears are comprised of principal, interest and impounds (if applicable).  To the extent that such payments are made by the debtors through the Plan, the principal balance indicated above will be reduced by that portion of the payment representing principal.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

**CHAPTER 13 PLAN**

Docket #___07-14909-RS_____

DEBTORS:  (H)___Francis Whratee Nyepon_____  SS#__xxx-xx-3362_____

(W)_____  SS#_____

TERM OF THE PLAN _____60_____ Months  (If the plan is longer than thirty-six (36) months and debtor's plan is governed by 11 U.S.C. § 1322(d), a statement of cause under must be attached)

PLAN PAYMENT:  Debtor(s) to pay monthly: $___545.00 for 59 months_____
$18,658.00 for 60th month

## I. SECURED CLAIMS

### A. CLAIMS TO BE PAID THROUGH THE PLAN (INCLUDING ARREARS):

| Creditor | Description of claim (pre-petition arrears, purchase money, etc.) | Amount of claim |
|---|---|---|
| Chrysler Financial | arrearage - car | $ 730.00 |
| Eastern Bank | arrearage - car | $ 542.00 |
| | | $ |
| | | $ |
| **Total of secured claims to be paid through the Plan:** | | $ **1,272.00** |

B. CLAIMS TO BE PAID DIRECTLY TO CREDITORS (Not through Plan):

| Creditor | Description of Claim |
|---|---|
| Chrysler Financial | car payment |
| Eastern Bank | car payment |
| | |

## II. PRIORITY CLAIMS

A. Domestic Support Obligations:

| Creditor | Description of claim | Amount of claim |
|---|---|---|
| N/A | | $ |

B. All Other Priority Creditors:

| Creditor | Description of claim | Amount of claim |
|---|---|---|
| IRS | 2005 – 1,663.00<br>2006 – 1,678.00 | $3,341.00 |
| | | |
| | | |

**Total of priority claims to be paid through the plan**    $3,341,00

## III. ADMINISTRATIVE CLAIMS

A.    Attorneys fees (to be paid through the plan):    $ 500.00

B.    Miscellaneous fees:

| Creditor | Description of claim | Amount of claim |
|---|---|---|
| | | |
| | | |

C.    The chapter 13 trustee's fee is determined by order of the United States Attorney General. The calculation of the Plan payment set forth below utilizes a 10% trustee's commission.

## IV. UNSECURED CLAIMS

The general unsecured creditors shall receive a dividend of   8.273 % of their claims.

A. General unsecured claims:    $11,616.92

B. Undersecured claims arising after rescission of mortgage:

| Creditor | Description of claim | Amount of claim |
|---|---|---|
| AMC Mortgage | 1st mortgage subject<br>to rescission | 420,259.00 |

C. Non-Dischargeable Unsecured Claims:

| Creditor | Description of claim | Amount of claim |
|---|---|---|
| | | |
| | | |

**Total of A + B + C unsecured claims: =**    $

D. **Multiply total by percentage:**                    $35,729.15_____
   (Example: Total of $38,500.00 x .22 dividend = $8,470.00)


E. Separately classified unsecured claims (co-borrower, etc.):

| Creditor | Description of claim | Amount of claim |
|----------|---------------------|-----------------|
| Boston Edison | _____ | $4,889.08_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |


**Total amount of separately classified claims payable at  100  %:**

                                    $ 4,889.08_____

V. <u>**OTHER PROVISIONS**</u>

A. Liquidation of assets to be used to fund plan: _____

B. Modification of Secured Claims: Set forth details of modifications below or on attached sheets. This information should include name of creditor and detailed explanation of the modification. The total amount of the secured claim that is to be paid through the plan (inclusive of interest) should be set forth in Section I of this Plan.

<u>Debtor intends to challenge the amount and/or validity of any secured claim asserted in this case by AMC Mortgage (or any successor in interest to AMC Mortgage) based on violations of various consumer protection laws and Debtor shall serve AMC Mortgage with a Notice of Rescission pursuant to M.G.L.C. 140D, §10. Debtor shall file an objection to AMC Mortgage's claim. Debtor shall treat AMC Mortgage's claim as an unsecured claim. In the event the Debtor cannot rescind the mortgage the Debtor reserves the right to cramdown the mortgage. The residence is a two-family property.</u>


C. Assumption/Rejection of Leases:

_____
_____

D. Miscellaneous provisions:_____
_____

## CALCULATION OF PLAN PAYMENT

a.  Secured claims (Section I-A Total):                          $___1,272.00___

b.  Priority claims (Section II-A & B Total):                    +$___3,341.00___

c.  Administrative claims (Section III A + B Total):             +$___500.00___

d.  Regular unsecured claims (Section IV-D Total):               +$___35,729.15___

e.  Separately classified unsecured claims
    (Section IV-E Total):                                        +$___4,889.08___

f.  Total of a + b + c + d + e above:                           =$___45,731.23___

g.  Divide (f) by .90 for total including Trustee's fees:
                                Cost of Plan = $___50,812.48___
                    (This represents the total amount to be paid into the Chapter 13 plan)

h.  Divide (g) Cost of Plan by Term of Plan:                     ÷ _60_ months

i.  Round up to nearest dollar: Monthly Plan Payment =  $___545.00___
                                (Enter this amount on page 1)
                                Final 60th month payment $18,658.00


Pursuant to 11 U.S.C. § 1326(a)(1), unless the Court orders otherwise, a debtor shall commence making the payments proposed by a plan within thirty (30) days after the petition is filed. Pursuant to 11 U.S.C. § 1326(a)(1)(C), the debtor shall make pre-confirmation adequate protection payments directly to the secured creditor.


## LIQUIDATION ANALYSIS

I. Real Estate:

| List Each Address | Fair Market Value | Total Amount of Recorded Liens (Schedule D) |
|---|---|---|
| 29-31 Mather St. | $ 362,568.00 ÷ 2 = $ 181,284.00 | $ 0 |
| | $ | $ |
| | $ | $ |

| | |
|---|---|
| Total Net Equity for Real Property: | $___181,284.00___ |
| Less Total Exemptions (Schedule C): | $___136,875.00___ |
| Available Chapter 7: | $___44,409.00___ |

II. Automobile (Describe year, make and model):

___N/A___ Value $_____ Lien $_____ Exemption $_____

_____ Value $_____ Lien $_____ Exemption $_____

Total Net Value Equity:          $_____0_____

Less Total Exemptions (Schedule C):   $_____

Available Chapter 7:             $_____0_____

III. <u>All Other Assets</u>: (All remaining items on Schedule B): (Itemized as necessary)

_____3,805_____

_____

Total Net Equity:                $_3,805.00_____

Less Exemptions (Schedule C):    $_3,755.00_____

Available Chapter 7:             $____50.00_____

**SUMMARY   (Total amount available under Chapter 7):**

Net Equity (I and II) Plus Other Assets (III) less all claimed exemptions:  $_44,459.00____

Additional Comments regarding Liquidation Analysis:

_____

_____

Pursuant to Chapter 13 rules, the debtor or his or her counsel is required to serve a copy of the Plan upon the Chapter 13 trustee, all creditors and interested parties, and to file a certificate of service accordingly.

_Ann Brennan_____          ____9/7/07_____

Debtor's counsel               Date

Address:   STEPHEN E. SHAMBAN LAW OFFICES, P.C.
           P.O. BOX 850973, 222 FORBES RD., STE. 208
           BRAINTREE, MA  02185-0973
Telephone #:  (781) 849-1136
e-mail address:_____

I/WE DECLARE UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF OUR KNOWLEDGE AND BELIEF.

Debtor –                                    Date    *28 August 2007*

Debtor                                      Date

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| FRANCIS WHRATEE NYEPON | CASE NO. |
| Debtor. | |

## OFFICIAL FORM 7

### DECLARATION RE: ELECTRONIC FILING

PART I- DECLARATION OF PETITIONER

I ____Francis Whratee Nyepon____, *hereby declare(s) under penalty of perjury* that all of the information contained in my ___CHAPTER 13 PLAN AND FORM 22C___ _____ (singly or jointly the "Document"), filed electronically, is true and correct. I understand that this *DECLARATION* is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this *DECLARATION* may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: 28 August 2007    Signed: _____
FRANCIS WHRATEE NYEPON
(Affiant)

PART II - DECLARATION OF ATTORNEY (IF AFFIANT IS REPRESENTED BY COUNSEL)

I certify that the affiant(s) signed this form before I submitted the Document, I gave the affiant(s) a copy of the Document and this *DECLARATION*, and I have followed all other electronic filing requirements currently established by local rule and standing order. This *DECLARATION* is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed. R. Bankr. P. 9011. I have reviewed and will comply with the provisions of MEFR 7.

Dated: 9/7/07    Signed: _____
ANN BRENNAN
Attorney for Affiant

Exhibit "A"

| United States Bankruptcy Court   **District of Massachusetts** | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor Francis Whratee Nyepon | Case Number 07-14809-RS | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case A "request" for payment of an administrative expense may be filed pursuant to 11 U S C § 503

| Name of Creditor (The person or other entity to whom the debtor owes money or property) <br><br> AMC Mortgage Services, Inc as loan servicer for Secured Creditor Town and Country Credit Corporation <br><br> Name and address where notices should be sent: <br><br> AMC Mortgage Services Inc <br> P O BOX 5926 <br> Carol Stream, IL 60197-5926 <br><br> Attn: Mario Vasquez <br> Telephone number: (714) 634-2474 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars <br><br> ☐ Check box if you have never received any notices from the bankruptcy court in this case <br><br> ☐ Check box if the address differs from the address on the envelope sent to you by the court | This space is for court Use Only |
| Account or other number by which creditor identifies debtor. 0092738608 | Check here ☐ replaces <br> if this claim ☐ amends     a previously filed claim dated:_____ | |

| 1   Basis for claim <br> ☐ Goods sold <br> ☐ Services performed <br> ☒ Money loaned <br> ☐ Personal injury/wrongful death <br> ☐ Taxes <br> ☐ Other_____ | ☐ Retiree benefits as defined in 11 U S.C. § 1114(a) <br> ☐ Wages, salaries, and compensation (Fill out below) <br><br> Last four digits of SS#:_____ <br><br> Unpaid compensation for services performed <br> from_____ to _____ <br> (date)        (date) |
|---|---|
| 2. Date debt was incurred: September 21, 2004 | 3. If court judgment, date obtained: |

| 4. Total Amount of Claim at Time Case Filed: | $_____ | $491,380.23 | $_____ | $491,380.23 |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

If all or part of your claim is secured or entitled to priority, also complete item 5 or 7 below
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim Attach itemized statement of all interest additional charges.

| 5. Secured Claim. <br> ☒ Check this box if your claim is secured by collateral (including a right of setoff) <br><br> Brief Description of Collateral: <br> ☒ Real Estate  ☐ Motor Vehicle <br> ☐ Other_____ <br><br> Value of Collateral: $_____ <br><br> Amount of arrears and other charges *at time case filed* included in secured claim. if any $40,880.31 <br><br> 6. Unsecured Nonpriority Claim $_____ <br><br> ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it or if c) none or only part of your claim is entitled to priority | 7. Unsecured Priority Claim. <br> ☐ Check this box if you have an unsecured priority claim <br> Amount entitled to priority $_____ <br> Specify the priority of the claim: <br> ☐ Wages, salaries, or commission (up to $10,950.00),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C § 507(a)(4) <br> ☐ Contributions to an employee benefit plan - 11 U S C § 507(a)(4) <br> ☐ Up to $2,425* of deposits toward purchase, lease or rental of property or services for personal, family or household use - 11 U S C § 507(a)(6) <br> ☐ Alimony, maintenance, or support owed to a spouse, former spouse. or child - 11 U S C § 507(a)(7) <br> ☐ Taxes or penalties owed to governmental units - 11 U S C § 507(a)(8) <br> ☐ Other-Specify applicable paragraph of - 11 U S C § 507(a____) <br> *Amounts are subject to adjustment on 4/1/10 and every three years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|

| 8. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim <br> 9. Supporting Documents: *Attach copies of supporting documents, such as promissory notes, purchase orders,* invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. <br> DO NOT SEND ORIGINAL DOCUMENTS If the documents are not available, explain If the documents are voluminous, attach a summary <br> 10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped. self-addressed envelope and copy of this proof of claim. | This space is for Court use only |
|---|---|
| Date August 27, 2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney. if any):   Nancy K Swift/ Robert Rutta/ Christopher McCarthy <br> *Nancy Swift*    Attorneys for AMC Mortgage Services, Inc. |

Penalty for presenting fraudulent claim. Fined up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

*Exhibit "B"*

OSTROFF AND OSTROFF
ATTORNEYS AT LAW
24 UNION AVENUE • SUITE 6
FRAMINGHAM, MA 01702

TEL (508) 626-7010
FAX (508) 626-4242

November 11, 2005

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED

WM Specialty Mortgage, LLC
c/o J.A. Associates
175 Ballard Road, Suite 216
Chelmsford, MA  01824-4160

AMC Mortgage Services
c/o Nancy K. Swift, Esc
Buchalter Nemer
Attn:  Residential Bankruptcy Group
6600 East Shea Blvd., Ste. 201
Phoenix, AZ  85028

Town and Country Credit Corp
3 Main Street, Suite 500
Irvine, CA  92614

RE:     Francis Wratee Nyepon
Ellen Nyepon
29-31 Mather Street
Boston, MA  02124
Loan No. 050 2738608-63161

Francis Wratee Nyepon
Chapter 13 - Case No. 05-16968 RS

Transaction Dated:  September 21, 2004

Dear Sirs:

I represent the above referenced homeowners Francis Wratee Nyepon and Ellen Nyepon, who entered into a consumer loan refinance transaction with Town and Country Credit Corp ("Town and Country"). I have been authorized by Mr. and Mrs. Nyepon to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, §10 ("MCCCDA") and the regulations promulgated thereunder, 209 CMR 32.23.

Exhibit "C"

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS – EASTERN DIVISION

### CHAPTER 13 PLAN COVER SHEET

Filing Date:___9/7/2007_____          Docket No.:___07-14909-RS_____

Debtor:__Francis Whratee Nyepon___          Co-Debtor:_____

SS#:__xxx-xx-3362_____          SS#:_____

Address:_____31 Mather Street_____          Address:_____
_____Dorchester, MA  02124_____          _____

Debtor's Counsel:____ANN BRENNAN (BBO 237770)___

Address: STEPHEN E. SHAMBAN LAW OFFICES, P.C.

P.O. BOX 850973, 222 FORBES RD., STE. 208

BRAINTREE, MA  02185-0973_____

Telephone #:_(781) 849-1136_____

Facsimile #:_(781) 848-9055_____

ATTACHED TO THIS COVER SHEET IS THE CHAPTER 13 PLAN FILED BY THE DEBTOR(S) IN THIS CASE.  THIS PLAN SETS OUT THE PROPOSED TREATMENT OF THE CLAIMS OF CREDITORS.  THE CLAIMS ARE SET FORTH IN THE BANKRUPTCY SCHEDULES FILED BY THE DEBTOR(S) WITH THE BANKRUPTCY COURT.

YOU WILL RECEIVE OR HAVE RECEIVED A SEPARATE NOTICE FROM THE BANKRUPTCY COURT OF THE SCHEDULED CREDITORS MEETING PURSUANT TO 11 U.S.C. SEC. 341.  THAT NOTICE WILL ALSO ESTABLISH THE BAR DATE FOR FILING PROOFS OF CLAIM.

PURSUANT TO THE MASSACHUSETTS LOCAL BANKRUPTCY RULES, YOU HAVE UNTIL FIFTEEN (15) DAYS AFTER THE SECTION 341 MEETING TO FILE AN OBJECTION TO CONFIRMATION OF THE CHAPTER 13 PLAN, WHICH OBJECTION MUST BE SERVED ON THE DEBTOR, DEBTOR'S COUNSEL AND THE CHAPTER 13 TRUSTEE.

*Exhibit "D"*



1100 Town & Country Road, Orange, CA 92868
(714) 541-9960

September 20, 2007                                                    *Via Federal Express*

Stephen E. Shamban, Esq.
Stephen E. Shamban Law offices, P.C.
222 Forbes Rd, Suite 208
Braintree, MA 02185-0973

Re:     *Borrower:*                          *Ellen & Francis Nyepon*
        *Ameriquest Loan Number Ending In:*   *XXXXXXX608*
        *Property Address:*                   *31 Mather St.*
                                              *Boston, MA 02124*

Dear Mr. Shamban:

AMC Mortgage Services ("AMC") is the current sevicer of your client's loan, and because effective October 1, 2007, the servicing on your client's loan will be transferred to Citi Residential Lending ("CRLI"), we provide this response on behalf of both AMC and CRLI.

We are in receipt of your client's Chapter 13 bankruptcy plan which states that you propose to treat the loan which is secured by a 1st lien mortgage as an unsecured claim. The reason stated in the Plan for treating the debt as unsecured is that the first mortgage is subject to rescission. AMC is treating your statement in the Chapter 13 plan as a formal rescission demand.

Our review of your client's transaction confirms that all material disclosures were accurately provided to your client and that they executed the Lender's copy of the *Notice of Right to Cancel* to acknowledge their receipt of two (2) completed copies of the document. We enclose copies of the Notice of Right to Cancel for you review and information. Without any further information regarding a basis for rescission we respectfully deny your client's rescission request and will be filing an objection to the confirmation of the Plan to the extent that you continue to treat the AMC claim as unsecured.

We trust that this responds to your concerns.

Sincerely,

Sabrina Lemmon
Legal Analyst II

cc:     Carolyn Bankowski
        Chapter 13 Trustee Boston
        PO Box 8250
        Boston, MA 02114

        Sanjit Korde
        Korde & Associates
        321 Billerica Rd., Ste. 210
        Chelmsford, MA 01824

Also doing business as Delaware AMC Mortgage Services, Inc., in the states of Texas, Rhode Island, and New Hampshire

## NOTICE OF RIGHT TO CANCEL

LENDER:   Town and Country Credit Corp.

DATE:   September 21, 2004
LOAN NO.:   0002738608 - 60161
TYPE:   ADJUSTABLE RATE

BORROWER(S): Ellen Nyepon        Francis Nyepon

ADDRESS:        31 Mather St
CITY/STATE/ZIP:   Boston,MA 02124

PROPERTY:   29-31 Mather St
              Boston,  MA   02124

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| 9/21/04 |

;

or

2.   The date you received your Truth in Lending disclosures;
or

3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Town and Country Credit Corp.
2010 Main St., Suite 800
Irvine, CA 92614

ATTN:  FUNDING
PHONE: (888)469-8222 ext 2836
FAX:      (949)255-4930

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| 9/24/04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____            _____
SIGNATURE                                                    DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.



_____  9/21/04    _____  9/21/04
BORROWER/OWNER Ellen Nyepon    Date    BORROWER/OWNER Francis Nyepon    Date

_____              _____
BORROWER/OWNER        Date    BORROWER/OWNER        Date

1994 RAC (Rev 01/06)

LENDER COPY

09/21/2004 6:38:53 AM

Exhibit E

Loan Number: 00927386C   0161

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 21, 2004        Irvine        CA
     [Date]            [City]           [State]

29-31 Mather St, Boston, MA  02124
[Property Address]

## 1  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $458,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Town and Country Credit Corp. .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.850%. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   November 1, 2004  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   October 1, 2034   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 2010 Main St., Suite 800,  Irvine, CA 92614

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,635.85.  This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  October, 2006  , and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   six and one-half percentage point(s) (  6.500  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

1 of 3

Initials: _____

ORIGINAL

09/21/2004 8:38:53 AM

00000009123350003000440301
201-1MA (Rev 7/03)

Loan Number 0092738608 - 81

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.850 % or less than 8.850 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) (1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.850 % or less than 8.850 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5    BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.
3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7    BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)    No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:

2 of 3

**ORIGINAL**

09/21/2004 8:38:53 AM

20- 2MA (Rev. 7/03)

Loan Number: 00927386    30161

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW PROVISION**
This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Ella Nyeson_  9/21/04  (Seal)          _Francis Nyapp_          (Seal)
Borrower Ellen Nyeson                             Borrower Francis Nyapp

_Jonathan P. Ash_  (Seal)          _____  (Seal)
Borrower Witness: Jonathan P. Ash          Borrower


0000000927386080300440303

3 of 3

09/21/2004 6:38:53 AM

ZN-144A (Rev. 7/03)

# ORIGINAL

Exhibit "F"

35623    208

Return To:
Town and Country Credit
Corp.
2010 Main St., Suite 800,
Irvine, CA 92614

Please return to:
Law Offices of Russo & Minchoff
123 Boston Street, 1st Floor
Boston, MA 02125

554

Prepared By: Town and Country Credit Corp.

Jacquelyn Balboni
300 Granite Street, 2nd
Floor, Suite 205, Braintree,
MA 02184

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

REGISTER OF DEEDS

2004 OCT -5 AM 11:05

SUFFOLK REGISTRY

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 21, 2004 together with all Riders to this document.
(B) "Borrower" is Ellen Nyepon and Francis Nyepon, Husband and Wife as Tenants by the Entirety

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Town and Country Credit Corp.

Lender is a Corporation
organized and existing under the laws of Delaware

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022  1/01
0092738608 - 60161
09/21/2004 6:38:53 AM

AM6MA (0311)
Page 1 of 15                                        Initials
VMP Mortgage Solutions (800)521-7291

10/05/2004 Doc: 0554

09-31 Mather St, Dorchester, MA 02124

35 .23    209

Lender's address is 2010 Main St., Suite 800  Irvine, CA 92614

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated September 21, 2004
The Note states that Borrower owes Lender four hundred fifty-eight thousand and
00/100                                                                          Dollars
(U.S. $ 458,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider             [ ] Planned Unit Development Rider  [X] 1-4 Family Rider
[ ] VA Rider                  [ ] Biweekly Payment Rider      [ ] Other(s) [specify]


(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

Initials: 

AM6MA (0311)                        Page 2 of 15                          Form 3022  1/01

0092738608 - 60161
09/21/2004  6:38:53

0000009273860030131 1602

35.23  210

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                                                    [Type of Recording Jurisdiction]
of **SUFFOLK**                                    [Name of Recording Jurisdiction]:
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: PARCEL ID# 17-00865-000                        which currently has the address of
29-31 Mather St                                                                    [Street]
Boston                                            [City], Massachusetts 02124        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.


000000927386080301311603

356_3    211

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay

Initials: 

AM6MA (0311)                                  Page 4 of 15                                  Form 3022   1/01

0092738608 - 60161

09/21/2004  6:38:53

the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.

Initials: 

AM6MA (0311)                    Page 5 of 15                    Form 3022   1/01

0092738608 - 60161

09/21/2004 6:38:53

356_3    213

Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the

Initials: 

AM6MA (0311)                Page 6 of 15                Form 3022   1/01

0092738608 - 60161

09/21/2004  6:38:53

0000009273860803013116608

excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees

AM6MA (0311)                    Page 7 of 15     Initials:             Form 3022   1/01

0092738608 - 60161

09/21/2004 6:38:53

356&3  215

to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Initials: 

AM6MA (0311)                          Page 8 of 15                          Form 3022  1/01

0092738608 - 60161

09/21/2004  6:38:53

0000009273860803013116608

35823    216

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a


0092738608 - 60161

09/21/2004 6:38:53

000000927366080301311609

ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

Initials: 

AM6MA (0311)                          Page 10 of 15                          Form 3022  1/01

3 323  218

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Initials: _____

0092738608 - 60161

09/21/2004 6:38:53

0000009273860803013116II

J5623   219

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by

Initials: 

AM6MA (0311)                     Page 12 of 15                     Form 3022    1/01

0092738608 - 60161

09/21/2004 6:38:53

0000009273860030131161012

15623    220

any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

AM6MA (0311)                         Page 13 of 15                         Initials:                          Form 3022   1/01

0092738608 - 60161

09/21/2004 6:38:53

J5623   221

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ 9/21/04 (Seal)
Ellen Nyepon                                    -Borrower

_____

_____ (Seal)
Francis Nyepon                                   -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                  -Borrower

AM6MA (0011)                      Page 14 of 15                      Form 3022  1/01
0092738608 - 60161
09/21/2004 6:38:53 AM


0000092738608030131 1614

∪5623   222

COMMONWEALTH OF MASSACHUSETTS, *Suffolk* County ss:

On this <u>21st</u> day of <u>Sept., 2004</u>, before me, the undersigned
      Day        Month/Year
notary public, personally appeared



*Ellen Nyepon*

_____

_____

proved to me through satisfactory evidence of identification, which was/were MA DL
, to be the person(s) whose name(s) is/are signed on the preceding document , and
acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

JONATHAN P. ASH
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 27, 2008


Notary Public

0092738608 - 60161

09/21/2004 6:38:53 AM

400-15MA (04/04)          Page 15 of 15          00000092738608030131161S

5623    223

## Exhibit A

### 29-31 Mather Street, Dorchester, MA 02124

The following two adjoining parcels of real estate, viz:

First:  the land with buildings thereon numbered 29 on Mather street in that part of Boston, Suffolk County, Massachusetts, formerly Dorchester, being part of Lot A on a plan drawn by S. Chipman, Surveyor, dated July 1946, recorded with Suffolk Deeds, Book 6240, Page 538, bounded and described as follows:

SOUTHEASTERLY  by said Mather Street, thirty-seven (37) feet;

NORTHEASTERLY  by land now or formerly of King, ninety (90) feet;

NORTHWESTERLY by land now or formerly of Kelley and Hancock and land now or formerly of Toland, thirty-seven (37) feet; and

SOUTHWESTERLY  by the remainder of said Lot A, by a line running in part through the center of partition wall, ninety (90) feet.

Containing 3,330 square feet of land; and by said measurements and contents more or less and according to said plan.

Second:  The land with the buildings thereon numbered 31 on said mater Street, being part of said Lot A on said plan recorded with said Suffolk Deeds, Book 6240, page 538, bounded and described as follows:

SOUTHEASTERLY  by said Mather Street, thirty-four (34) feet;

SOUTHWESTERLY  by land now or formerly of Tappen, ninety (90) feet;

NORTHWESTERLY by land now or formerly of Toland, thirty-four (34) feet;

NORTHEASTERLY  by the remainder of said Lot A, by a line running in part through the center of a partition wall, ninety (90) feet.

Containing 3,060 square feet of land, and by said measurements and contents more or less and according to said plan.

*For title, see deed recorded herewith.*

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 21st day of September , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Town and Country Credit Corp. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

29-31 Mather St, Boston, MA  02124

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  8.850 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A) Change Dates
The interest rate I will pay may change on the first day of  October, 2006 , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

    (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials 

Loan Number:  0092738608 - 60161

0000009273860803021503 01

610-1 (Rev 1/01)          Page 1 of 3          09/21/2004 6:38:53 AM

35023  225

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-half percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.850%** or less than **8.850%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding  six months. My interest rate will never be greater than 14.850)% or less than 8.850)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials

Loan Number:  0092738608 - 60161

000000927386080302160302

810-2 (Rev 1/01)                    Page 2 of 3

09/21/2004 6:38:53 AM

3623    226

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.



_____ (Seal)          _____ (Seal)
Borrower Ellen Nyepon                    Borrower Francis Nyepon

_____ (Seal)          _____ (Seal)
Borrower                                 Borrower

Loan Number: 0092738608 - 60161

0000000927386080302150303

810-3 (Rev 1/01)            Page 3 of 3            09/21/2004 6:38:53 AM

J5623  227

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 21st          day of September, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Town and Country Credit Corp.

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
29-31 Mather St. Boston, MA  02124

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

0092738608

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials: _____
Page 1 of 4                                                      Form 3170 1/01
-57R (0008)          VMP MORTGAGE FORMS - (800)521-7291    09/21/2004  6:38:53 AM

0000009273860803022104010

00000092738608030221040101

35023   228

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

09/21/2004 6:38:53 AM
0092738608

VMP-57R (0008)          Page 2 of 4          Initials: _____
                                              Form 3170 1/01

0000009273880803022104402

356¢3   229

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

09/21/2004 6:38:53 AM

VMP-57R (0008)

Page 3 of 4

Initials: 

0092738608
Form 3170 1/01

000000927386080302210403

35623   230

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
Ellen Nyepon                -Borrower

_____ (Seal)
Francis Nyepon              -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

0092738608

VMP-57R (0008)          Page 4 of 4          Form 3170 1/01

09/21/2004 6:38:53 AM



0000009273860803022104D4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                              )
    Francis Whratee Nyepon,    )          Chapter 13
                      )          Case No. 07-14909-WH
        Debtor.                    )
                      )
_____)


_____
Francis Whratee Nyepon,             )
        Debtor,                    )
                Plaintiff,          )
                      )
v.                                  )          Adversary Proceeding #08-01109
                      )
WM Specialty Mortgage, LLC,         )
et. al.,                            )
                      )
           Defendants.          )
_____)

## ANSWER AND COUNTERCLAIM OF WM SPECIALTY MORTGAGE, LLC

WM Specialty Mortgage, LLC (hereinafter "WM"), a defendant in the above captioned

action, hereby answers the Plaintiff's Complaint as follows:

### I. SUMMARY

WM admits that the Plaintiff's Complaint purports to be an objection to the proof of

claim filed by AMC Mortgage Services ("AMC") and to assert claims against AMC, WM, and

Town and Country Credit Corp. Further answering, WM denies that it or its predecessors did

anything that would entitle the Plaintiff to the relief sought in this adversary proceeding.

### II. PARTIES

1.     WM admits the allegations set forth in the first sentence of Paragraph 1 of the

Plaintiff's Complaint. Further answering, WM denies the allegations set forth in the third

sentence of this paragraph of the Plaintiff's Complaint. Further answering, WM states that it is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 1 of the Plaintiff's Complaint.

2. WM admits that Town and Country is engaged in the business of residential lending as alleged in Paragraph 2 of the Plaintiff's Complaint.

3. WM admits that it is the current holder of the mortgage as alleged in Paragraph 3 of the Plaintiff's Complaint.

4. WM admits the allegations set forth in Paragraph 4 of the Plaintiff's Complaint.

## III. JURISDICTION

WM admits the allegations set forth in this unnumbered paragraph.

## IV. FACTS

1. WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Plaintiff's Complaint.

2. WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Plaintiff's Complaint.

3. WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Plaintiff's Complaint.

4. WM denies the allegations set forth in Paragraph 4 of the Plaintiff's Complaint.

5. WM neither admits nor denies the allegations set forth in Paragraph 5 of the Plaintiff's Complaint and, further answering, states that the writings speak for themselves.

6. WM neither admits nor denies the allegations set forth in Paragraph 6 of the Plaintiff's Complaint and, further answering, states that the writings speak for themselves.

7. WM denies the allegations set forth in Paragraph 7 of the Plaintiff's Complaint.

8.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Plaintiff's Complaint.

9.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Plaintiff's Complaint.

10.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Plaintiff's Complaint.

11.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Plaintiff's Complaint.

12.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Plaintiff's Complaint.  However, further answering, WM states that the right of rescission notice bears the debtor's signature.

13.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Plaintiff's Complaint.

14.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Plaintiff's Complaint.

15.      WM neither admits nor denies the allegations set forth in Paragraph 15 of the Plaintiff's Complaint and, further answering, states that the writing speaks for itself.

16.      WM admits the allegations set forth in Paragraph 16 of the Plaintiff's Complaint.

17.      WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Plaintiff's Complaint.

18.      WM admits the allegations set forth in Paragraph 18 of the Plaintiff's Complaint.

19.      WM denies the allegations set forth in Paragraph 19 of the Plaintiff's Complaint.

<u>COUNT I</u>

20.    WM realleges its answers to Paragraphs 1-19, inclusive, of the Plaintiff's Complaint as if fully set forth herein.

21.    WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Plaintiff's Complaint.

22.    WM denies the allegations set forth in Paragraph 22 of the Plaintiff's Complaint.

23.    WM denies the allegations set forth in Paragraph 23 of the Plaintiff's Complaint.

24.    WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Plaintiff's Complaint.

25.    WM denies the allegations set forth in Paragraph 25 of the Plaintiff's Complaint.

26.    WM denies that the failure alleged in Paragraph 26 of the Plaintiff's Complaint occurred.

27.    WM denies that any violations of the Federal Truth in Lending Laws occurred as alleged in Paragraph 27 of the Plaintiff's Complaint.

28.    WM is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Plaintiff's Complaint.

29.    WM denies the allegations set forth in Paragraph 29 of the Plaintiff's Complaint.

<u>COUNT II</u>

30.    WM realleges its answers to Paragraphs 1-29, inclusive, of the Plaintiff's Complaint as if fully set forth herein.

31.    WM denies that the failure alleged by the Plaintiff in Paragraph 31 of the Plaintiff's Complaint occurred.

32.     WM denies that the failure alleged by the Plaintiff in Paragraph 32 of the Plaintiff's Complaint occurred.

COUNT III

33.     WM realleges its answers to Paragraphs 1-32, inclusive, of the Plaintiff's Complaint as if fully set forth herein.

34.     WM denies the allegations set forth in Paragraph 34 of the Plaintiff's Complaint.

FIRST AFFIRMATIVE DEFENSE: Failure to State a Claim

Further answering, WM states that the Plaintiff's Complaint fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE: Laches

And further answering, WM states that the Plaintiff's claims are barred by the doctrine of laches.

THIRD AFFIRMATIVE DEFENSE: Waiver

And further answering, WM states that the Plaintiff has waived the claims set forth in his Complaint.

FOURTH AFFIRMATIVE DEFENSE: Purchase Money Mortgage

And further answering, WM states that at least as it related to the Debtor, the mortgage granted was a purchase money mortgage.

FIFTH AFFIRMATIVE DEFENSE:  Equitable Subrogation

And further answering, WM states that Plaintiff's claims are barred in whole or in part by the doctrine of equitable subrogation.

<u>SIXTH AFFIRMATIVE DEFENSE:  Subrogation</u>

And further answering, WM states that Section 509(a) of the Bankruptcy Code bars the

Plaintiff's claim in whole or in part.

<u>SEVENTH AFFIRMATIVE DEFENSE:  Failure to Join an Indispensable Party</u>

And further answering, WM states that the Plaintiff's Complaint should be dismissed by

virtue of his failure to join an indispensable party.

<u>EIGHTH AFFIRMATIVE DEFENSE:  Ratification</u>

And further answering, WM states that the Plaintiff's claims are barred by virtue of his

ratification of the acts of his agent.

<u>NINTH AFFIRMATIVE DEFENSE:  STATUTE OF LIMITATIONS</u>

And further answering, WM states that the Plaintiff's claims are barred by the applicable

statute of limitations.

Wherefore WM Specialty Mortgage, LLC, respectfully requests that this Court issue an

order dismissing the Plaintiff's Complaint with prejudice and costs.

Respectfully submitted,
WM Specialty Mortgage, LLC,
By its attorneys,


/s/ Jeffrey B. Loeb
Jeffrey B. Loeb, Esq., BBO# 546916
Rich May, a Professional Corporation
176 Federal Street, 6th Floor
Boston, MA 02110
(617) 556-3800
jloeb@richmaylaw.com

Dated: May 23, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey B. Loeb, counsel for WM Specialty Mortgage, LLC, hereby certify that the within pleading was served upon the other parties herein by mailing a true copy thereof, first class mail, postage prepaid, to the following:

Saul Ostroff
Ostroff & Ostroff
24 Union Avenue, Suite 6
Framingham, MA 01702

Dudley Goar
91 Main St.
Concord, MA 01742

<u>/s/ Jeffrey B. Loeb</u>
Jeffrey B. Loeb, Esq.

Dated:  May 23, 2008
\\Client\K$\Clients\C-84015\WM Speciality\Answer.doc

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>FRANCIS WHRATEE NYEPON<br>           Debtor. | Chapter 13<br>Case No.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br><br>        Plaintiff,<br><br>v.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY CREDIT CORP.<br>and AMC MORTGAGE SERVICES, INC.,<br><br>        Defendants. | Adversary Proceeding No. 08-01109 |

**AMC MORTGAGE SERVICES, INC.'S AMENDED**
**ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), as made applicable to this proceeding through Fed. R. Bankr. P. 7015, defendant AMC Mortgage Services, Inc. ("AMC") hereby submits its Amended Answer and Counterclaim in response to the Complaint of plaintiff Francis Whratee Nyepon ("plaintiff" or "Nyepon").

Except as expressly admitted or denied herein below, AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations of each and every paragraph of the Complaint.

**I.       SUMMARY**

With respect to the first sentence of the Summary of the Complaint, AMC admits that it filed a proof of claim and states that the document speaks for itself as to its content.  With respect

BOS-1218557 v4

to the second sentence of the Summary of the Complaint, AMC admits that it received Nyepon's

request for rescission and states that the document speaks for itself as to its content. AMC is

without knowledge or information sufficient to form a belief as to the truth of the allegations set

forth in the third sentence of the Summary of the Complaint and states that Nyepon's Chapter 13

Plan speaks for itself as to its content. With respect to the fourth sentence of the Summary of the

Complaint, AMC admits the allegations set forth therein and states that AMC's September 20,

2007 letter speaks for itself as to its content. The fifth sentence of the Summary of the

Complaint consists of plaintiff's characterization of his case or legal conclusions to which no

response is required. To the extent that a further response is required, AMC denies those

allegations set forth in the fifth sentence of the Summary of the Complaint that are directed

toward AMC and is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations set forth in the fifth sentence of the Summary of the Complaint.

## II.     PARTIES

1.     AMC is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in Paragraph 1 of Section II of the Complaint.

2.     AMC admits, upon information and belief, that Town and Country Credit Corp.

("Town and Country") had an address at 2010 Main Street, Suite 800, Irvine, CA 92614, and

had an address at 300 Granite Street, Suite 205, Braintree, MA 02184, but otherwise denies

the remaining allegations set forth in Paragraph 2 of Section II of the Complaint.

3.     AMC is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in Paragraph 3 of Section II of the Complaint.

4.     AMC admits that it has an address at 1100 Town and Country Road, Suite 1200,

Orange, CA 92868, but otherwise denies the remaining allegations set forth in Paragraph 4 of

Section II of the Complaint.

### III.    JURISDICTION

Nyepon's allegations as to the Court's jurisdiction consist of legal conclusions to which no response is required.

### IV.    FACTS

1.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Section IV of the Complaint.

2.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of Section IV of the Complaint.

3.    AMC admits, upon information and belief, that the mortgage loan that is the subject of this lawsuit closed on or about September 21, 2004 (the "mortgage loan"), but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3 of Section IV of the Complaint.

4.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of Section IV of the Complaint.

5.    AMC states that the Note and Mortgage referenced in Paragraph 5 of Section IV of the Complaint speak for themselves as to their content, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 5 of Section IV of the Complaint.

6.    AMC states that the Note referenced in Paragraph 6 of Section IV of the Complaint speaks for itself as to its content.

7.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of Section IV of the Complaint.

8.    AMC states that the requisite disclosures were provided in connection with the mortgage loan, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 8 of Section IV of the Complaint.

9.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of Section IV of the Complaint.

10.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of Section IV of the Complaint.

11.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of Section IV of the Complaint.

12.    AMC denies the allegations set forth in Paragraph 12 of Section IV of the Complaint.

13.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of Section IV of the Complaint.

14.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of Section IV of the Complaint.

15.    AMC states that the Note referenced in Paragraph 15 of Section IV of the Complaint speaks for itself as to its content.

16.    AMC states that the assignment on file with the Registry of Deeds at Book 39954, Page 322 speaks for itself as to its content.

17.    AMC denies that the terms of the mortgage loan were not disclosed to Nyepon, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 17 of Section IV of the Complaint.

18.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of Section IV of the Complaint.

19.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of Section IV of the Complaint.

## COUNT I
### (Violation of Chapter 93A)

20.    AMC repeats and realleges its prior responses as if fully set forth herein.

21.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint.

22.    AMC denies the allegations set forth in Paragraph 22 of the Complaint.

23.    AMC denies the allegations set forth in Paragraph 23 of the Complaint.

24.    AMC denies the allegations set forth in Paragraph 24 of the Complaint.

25.    AMC denies the allegations set forth in Paragraph 25 of the Complaint.

26.    AMC denies the allegations set forth in Paragraph 26 of the Complaint.

27.    AMC denies the allegations set forth in Paragraph 27 of the Complaint.

28.    AMC is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint.

29.    AMC denies the allegations set forth in Paragraph 29 of the Complaint.

The remainder of Count I of the Complaint contains a prayer for relief to which AMC is not required to respond.  To the extent that a further response is required, AMC denies that Nyepon is entitled to any of the forms of relief requested.

## COUNT II
### (Truth in Lending Action and/or MCCDA Violations)

30.    AMC repeats and realleges its prior responses as if fully set forth herein.

31.    AMC denies the allegations set forth in Paragraph 31 of the Complaint.

32.     AMC denies the allegations set forth in Paragraph 32 of the Complaint.

The remainder of Count II of the Complaint contains a prayer for relief to which AMC is

not required to respond.  To the extent that a further response is required, AMC denies that

Nyepon is entitled to any of the forms of relief requested.

## COUNT III
### (Objection to Proof of Claim)

33.     AMC repeats and realleges its prior responses as if fully set forth herein.

34.     AMC denies the allegations set forth in Paragraph 34 of the Complaint.

The remainder of Count III of the Complaint contains a prayer for relief to which AMC is

not required to respond.  To the extent that a further response is required, AMC denies that

Nyepon is entitled to any of the forms of relief requested.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails to state a claim upon which relief may be granted

against AMC.

2.     Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to

state his claims with sufficient particularity.

3.     Plaintiff's claims are barred, in whole or in part, under the doctrines of release,

estoppel, laches, and waiver.

4.     Plaintiff's claims may be barred, in whole or in part, because he may be a member

of a prior settlement or class that released some or all claims alleged by plaintiff.

5.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

6.     Plaintiff's claims are barred, in whole or in part, because he has failed to mitigate

his alleged damages.

7.      Plaintiff's claims are barred, in whole or in part, because any alleged acts or failures to act on the part of AMC were excused by the actions of plaintiff or others.

8.      If plaintiff suffered an injury, which AMC denies, such injury was caused by the conduct of others for whose conduct AMC is not responsible.

9.      Plaintiff's claims are barred, in whole or in part, on the ground that if plaintiff was damaged or a statute was violated in any manner whatsoever, such damage or violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not AMC, and any such intervening or superseding action of said parties and/or persons or entities bars plaintiff's recovery.

10.     Plaintiff by his knowledge, statements, and/or conduct, has consented and/or acquiesced to the alleged acts and/or omissions of AMC described in the Complaint.

11.     Plaintiff's claims are barred, in whole or in part, because plaintiff expressly, ostensibly, and/or implicitly authorized or ratified the transactions and/or acts and/or omissions at issue.

12.     Plaintiff's claims are barred, in whole or in part, because plaintiff would be unjustly enriched if allowed to recover on the Complaint.

13.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

14.     Plaintiff has failed to join an indispensable party.

15.     Plaintiff's claims are barred, in whole or in part, because plaintiff lacks standing as to some or all of the claims in the Complaint.

16.     Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to meet the jurisdictional prerequisites for maintaining a claim under Mass. Gen. Laws ch. 93A.

17.    AMC is not liable for any claims by plaintiff because AMC's conduct at all times complied with and was made in good faith conformity with all applicable contracts, covenants, laws, rules, regulations, and statutes.

18.    Any alleged violation by AMC was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

19.    AMC states that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated affirmative defenses.  AMC reserves its right to file an amended Answer asserting additional defenses, and/or to file a counter- or cross-complaint in the event that discovery indicates either is appropriate.

## **PRAYER**

WHEREFORE, defendant AMC Mortgage Services, Inc. respectfully requests that plaintiff's Complaint be dismissed with prejudice, that the Court enter judgment in AMC's favor on all counts of the Complaint, that AMC be awarded its costs and expenses, including attorneys' fees, incurred in this action, and that the Court grant such other relief as the Court deems just and proper.

## **COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 13, as made applicable to this proceeding through Fed. R. Bankr. P. 7013, defendant/counterclaimant AMC Mortgage Services, Inc. ("AMC") hereby brings this Counterclaim against plaintiff/defendant-in-counterclaim Francis Whratee Nyepon ("Nyepon") and states:

1.    The mortgage loan that is the subject of this lawsuit closed, upon information and belief, on or about September 21, 2004 (the "mortgage loan").  The mortgage loan is secured by property located at 29-31 Mather Street, Boston, Massachusetts 02124.

2.      On April 21, 2008, Nyepon filed a Complaint (the "Complaint") (Adversary Proceeding No. 08-01109) against Town and Country Credit Corp., WM Specialty Mortgage, LLC, and AMC, alleging violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") and objecting to the Proof of Claim that was filed in Nyepon's underlying Chapter 13 bankruptcy proceeding. Nyepon further alleges that he did not receive a copy of the purported three-day right of rescission notice, an alleged failure for which Nyepon appears to seek rescission of the mortgage loan under the federal Truth in Lending Act ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA").

3.      Nyepon's claims are without merit, and he is not entitled to rescind the mortgage loan under any statute or regulation, including, without limitation, Chapter 93A, TILA, or the CCCDA.

### COUNT I - DECLARATORY JUDGMENT PURSUANT TO DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

4.      AMC repeats and realleges the allegations set forth in the preceding paragraphs as if fully restated herein.

5.      By virtue of Nyepon's Complaint, an actual controversy has arisen and exists between AMC and Nyepon regarding whether he has a right to rescind the mortgage loan under Chapter 93A, TILA, the CCCDA, or any other statute or regulation.

6.      Nyepon alleges that AMC failed to allow Nyepon a purported three-day right to rescind the mortgage loan.

7.      Nyepon has no basis for rescission of the mortgage loan.

8.      AMC hereby seeks a declaration of the rights, duties, and liabilities of the parties with respect to Nyepon's Complaint concerning rescission of the mortgage loan, including, without limitation, a declaration that Nyepon is not entitled to rescind the mortgage loan, that he

has no cognizable claim against AMC, that AMC had no duty to provide a notice of right to rescind the mortgage loan, and that AMC has no duty to effect a rescission of the mortgage loan.

## **RELIEF REQUESTED**

WHEREFORE, defendant/counterclaimant AMC Mortgage Services, Inc. respectfully requests that the Court:

A.     Enter a declaration that plaintiff/defendant-in-counterclaim is not entitled to rescind the mortgage loan, that he has no cognizable claim against AMC, that AMC had no duty to provide a notice of right to rescind the mortgage loan, and that AMC has no duty to effect a rescission of the mortgage loan, or alternatively, that any such rescission should require a mutual exchange of monies and property by the parties, including those monies or property held by the current noteholder, through escrow; and

B.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

AMC MORTGAGE SERVICES, INC.

By its attorneys,

/s/ Gregory N. Blase
R. Bruce Allensworth (BBO #015820)
bruce.allensworth@klgates.com
Andrew C. Glass (BBO #638362)
andrew.glass@klgates.com
Gregory N. Blase (BBO #662751)
gregory.blase@klgates.com
David D. Christensen (BBO #666401)
david.christensen@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Dated: June 26, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and by first class mail to:

Saul M. Ostroff, Esq.                          Dudley Goar
24 Union Avenue, Suite 6                        91 Main Street
Framingham, MA 01702                            #206
                                                Concord, MA 01742
                                                978-369-1505
                                                Email: dudley@goar-law.com


Jeffrey B. Loeb
Rich May, A Professional Corporation
The Weld Building
176 Federal Street
Boston, MA 02110
(617) 556-3800
Fax : 617-556-3890
Email: jloeb@richmaylaw.com


                                                /s/ Gregory N. Blase
                                                Gregory N. Blase

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

In re:

FRANCIS WHRATEE NYEPON

               Debtor.

Chapter 13
Case No.  07-14909-WH

FRANCIS WHRATEE NYEPON,

               Plaintiff,

v.

WM SPECIALTY MORTGAGE, LLC,
TOWN AND COUNTRY CREDIT CORP.,
and AMC MORTGAGE SERVICES, INC.,

               Defendants.

Adversary Proceeding No. 08-01109

**TOWN AND COUNTRY CREDIT CORP.'S AMENDED**
**ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), as made applicable to this proceeding through

Fed. R. Bankr. P. 7015, defendant Town and Country Credit Corp. ("Town and Country") hereby

submits its Amended Answer and Counterclaim in response to the Complaint of plaintiff Francis

Whratee Nyepon ("plaintiff" or "Nyepon").

Except as expressly admitted or denied herein below, Town and Country is without

knowledge or information sufficient to form a belief as to the truth of the allegations of each and

every paragraph of the Complaint.

**I.     SUMMARY**

Town and Country is without knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in the first through fourth sentences of the Summary of the

Complaint. The fifth sentence of the Summary of the Complaint consists of plaintiff's characterization of his case or legal conclusions to which no response is required. To the extent that a further response is required, Town and Country denies those allegations set forth in the fifth sentence of the Summary of the Complaint that are directed toward Town and Country and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the fifth sentence of the Summary of the Complaint.

## II.    PARTIES

1.      Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Section II of the Complaint.

2.      Town and Country admits that it had an address at 2010 Main Street, Suite 800, Irvine, CA 92614, and had an address at 300 Granite Street, Suite 205, Braintree, MA 02184, but otherwise denies the remaining allegations set forth in Paragraph 2 of Section II of the Complaint.

3.      Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of Section II of the Complaint.

4.      Town and Country admits, upon information and belief, that AMC Mortgage Services, Inc. ("AMC") has an address at 1100 Town and Country Road, Suite 1200, Orange, CA 92868, but otherwise denies the remaining allegations set forth in Paragraph 4 of Section II of the Complaint.

## III.    JURISDICTION

Nyepon's allegations as to the Court's jurisdiction consist of legal conclusions to which no response is required.

## IV.    FACTS

1.    Town and Country admits is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Section IV of the Complaint.

2.    Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of Section IV of the Complaint.

3.    Town and Country admits that the mortgage loan that is the subject of this lawsuit closed on or about September 21, 2004 (the "mortgage loan"), but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3 of Section IV of the Complaint.

4.    Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of Section IV of the Complaint.

5.    Town and Country states that the Note and Mortgage referenced in Paragraph 5 of Section IV of the Complaint speak for themselves as to their content, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 5 of Section IV of the Complaint.

6.    Town and Country states that the Note referenced in Paragraph 6 of Section IV of the Complaint speaks for itself as to its content.

7.    Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of Section IV of the Complaint.

8.      Town and Country states that the requisite disclosures were provided in connection with the mortgage loan, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 8 of Section IV of the Complaint.

9.      Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of Section IV of the Complaint.

10.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of Section IV of the Complaint.

11.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of Section IV of the Complaint.

12.     Town and Country denies the allegations set forth in Paragraph 12 of Section IV of the Complaint.

13.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of Section IV of the Complaint.

14.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of Section IV of the Complaint.

15.     Town and Country states that the Note referenced in Paragraph 15 of Section IV of the Complaint speaks for itself as to its content.

16.     Town and Country states that the assignment on file with the Registry of Deeds at Book 39954, Page 322 speaks for itself as to its content.

17.     Town and Country denies that the terms of the mortgage loan were not disclosed to Nyepon, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 17 of Section IV of the Complaint.

18.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of Section IV of the Complaint.

19.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of Section IV of the Complaint.

## COUNT I
### (Violation of Chapter 93A)

20.     Town and Country repeats and realleges its prior responses as if fully set forth herein.

21.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint.

22.     Town and Country denies the allegations set forth in Paragraph 22 of the Complaint.

23.     Town and Country denies the allegations set forth in Paragraph 23 of the Complaint.

24.     Town and Country denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Town and Country denies the allegations set forth in Paragraph 25 of the Complaint.

26.     Town and Country denies the allegations set forth in Paragraph 26 of the Complaint.

27.     Town and Country denies the allegations set forth in Paragraph 27 of the Complaint.

28.     Town and Country is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint.

29.    Town and Country denies the allegations set forth in Paragraph 29 of the Complaint.

The remainder of Count I of the Complaint contains a prayer for relief to which Town and Country is not required to respond.  To the extent that a further response is required, Town and Country denies that Nyepon is entitled to any of the forms of relief requested.

## COUNT II
### (Truth in Lending Action and/or MCCDA Violations)

30.    Town and Country repeats and realleges its prior responses as if fully set forth herein.

31.    Town and Country denies the allegations set forth in Paragraph 31 of the Complaint.

32.    Town and Country denies the allegations set forth in Paragraph 32 of the Complaint.

The remainder of Count II of the Complaint contains a prayer for relief to which Town and Country is not required to respond.  To the extent that a further response is required, Town and Country denies that Nyepon is entitled to any of the forms of relief requested.

## COUNT III
### (Objection to Proof of Claim)

33.    Town and Country repeats and realleges its prior responses as if fully set forth herein.

34.    Town and Country denies the allegations set forth in Paragraph 34 of the Complaint.

The remainder of Count III of the Complaint contains a prayer for relief to which Town and Country is not required to respond.  To the extent that a further response is required, Town and Country denies that Nyepon is entitled to any of the forms of relief requested.

## **AFFIRMATIVE DEFENSES**

1.      Plaintiff's Complaint fails to state a claim upon which relief may be granted against Town and Country.

2.      Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to state his claims with sufficient particularity.

3.      Plaintiff's claims are barred, in whole or in part, under the doctrines of release, estoppel, laches, and waiver.

4.      Plaintiff's claims are barred, in whole or in part, because he may be a member of a prior settlement or class that released some or all claims alleged by plaintiff.

5.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

6.      Plaintiff's claims are barred, in whole or in part, because he has failed to mitigate his alleged damages.

7.      Plaintiff's claims are barred, in whole or in part, because any alleged acts or failures to act on the part of Town and Country were excused by the actions of plaintiff or others.

8.      If plaintiff suffered an injury, which Town and Country denies, such injury was caused by the conduct of others for whose conduct Town and Country is not responsible.

9.      Plaintiff's claims are barred, in whole or in part, on the ground that if plaintiff was damaged or a statute was violated in any manner whatsoever, such damage or violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Town and Country, and any such intervening or superseding action of said parties and/or persons or entities bars plaintiff's recovery.

10.     Plaintiff by his knowledge, statements, and/or conduct, has consented and/or acquiesced to the alleged acts and/or omissions of Town and Country described in the Complaint.

11.     Plaintiff's claims are barred, in whole or in part, because plaintiff expressly, ostensibly, and/or implicitly authorized or ratified the transactions and/or acts and/or omissions at issue.

12.     Plaintiff's claims are barred, in whole or in part, because plaintiff would be unjustly enriched if allowed to recover on the Complaint.

13.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

14.     Plaintiff has failed to join an indispensable party.

15.     Plaintiff's claims are barred, in whole or in part, because plaintiff lacks standing as to some or all of the claims in the Complaint.

16.     Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to meet the jurisdictional prerequisites for maintaining a claim under Mass. Gen. Laws ch. 93A.

17.     Town and Country is not liable for any claims by plaintiff because Town and Country's conduct at all times complied with and was made in good faith conformity with all applicable contracts, covenants, laws, rules, regulations, and statutes.

18.     Any alleged violation by Town and Country was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

19.     Town and Country states that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated

affirmative defenses.  Town and Country reserves its right to file an amended Answer asserting

additional defenses, and/or to file a counter- or cross-complaint in the event that discovery

indicates either is appropriate.

### PRAYER

WHEREFORE, defendant Town and Country Credit Corp. respectfully requests that

plaintiff's Complaint be dismissed with prejudice, that the Court enter judgment in Town and

Country's favor on all counts of the Complaint, that Town and Country be awarded its costs and

expenses, including attorneys' fees, incurred in this action, and that the Court grant such other

relief as the Court deems just and proper.

### COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, as made applicable to this proceeding through Fed. R.

Bankr. P. 7013, defendant/counterclaimant Town and Country Credit Corp. ("Town and

Country") hereby brings this Counterclaim against plaintiff/defendant-in-counterclaim Francis

Whratee Nyepon ("Nyepon") and states:

1.      The mortgage loan that is the subject of this lawsuit closed on or about

September 21, 2004 (the "mortgage loan").  The mortgage loan is secured by property located at

29-31 Mather Street, Boston, Massachusetts 02124.

2.      On April 21, 2008, Nyepon filed a Complaint (the "Complaint") (Adversary

Proceeding No. 08-01109) against Town and Country, WM Specialty Mortgage, LLC, and AMC

Mortgage Services, Inc., alleging violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") and

objecting to the Proof of Claim that was filed in Nyepon's underlying Chapter 13 bankruptcy

proceeding.  Nyepon further alleges that he did not receive a copy of the purported three-day

right of rescission notice, an alleged failure for which Nyepon appears to seek rescission of the

mortgage loan under the federal Truth in Lending Act ("TILA") and the Massachusetts

Consumer Credit Cost Disclosure Act ("CCCDA").

3.      Nyepon's claims are without merit, and he is not entitled to rescind the mortgage

loan under any statute or regulation, including, without limitation, Chapter 93A, TILA, or the

CCCDA.

## COUNT I - DECLARATORY JUDGMENT PURSUANT TO DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

4.      Town and Country repeats and realleges the allegations set forth in the preceding

paragraphs as if fully restated herein.

5.      By virtue of Nyepon's Complaint, an actual controversy has arisen and exists

between Town and Country and Nyepon regarding whether he has a right to rescind the

mortgage loan under Chapter 93A, TILA, the CCCDA, or any other statute or regulation.

6.      Nyepon alleges that Town and Country failed to allow Nyepon a purported three-

day right to rescind the mortgage loan.

7.      Nyepon has no basis for rescission of the mortgage loan.

8.      Town and Country hereby seeks a declaration of the rights, duties, and liabilities

of the parties with respect to Nyepon's Complaint concerning rescission of the mortgage loan,

including, without limitation, a declaration that Nyepon is not entitled to rescind the mortgage

loan and that Town and Country has no duty to effect a rescission of the mortgage loan.

## RELIEF REQUESTED

WHEREFORE, defendant/counterclaimant Town and Country Credit Corp. respectfully

requests that the Court:

A.      Enter a declaration that plaintiff/defendant-in-counterclaim is not entitled to

rescind the mortgage loan, and that Town and Country has no duty to effect a rescission of the

mortgage loan, or alternatively, that any such rescission should require a mutual exchange of monies and property by the parties, including those monies or property held by the current noteholder, through escrow; and

      B.    Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

TOWN AND COUNTRY CREDIT CORP.

By its attorneys,

/s/ Gregory N. Blase
R. Bruce Allensworth (BBO #015820)
bruce.allensworth@klgates.com
Andrew C. Glass (BBO #638362)
andrew.glass@klgates.com
Gregory N. Blase (BBO #662751)
gregory.blase@klgates.com
David D. Christensen (BBO #666401)
david.christensen@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Dated: June 26, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and by first class mail to:

Saul M. Ostroff, Esq.                         Dudley Goar
24 Union Avenue, Suite 6                      91 Main Street
Framingham, MA 01702                          #206
                                              Concord, MA 01742
                                              978-369-1505
                                              Email: dudley@goar-law.com


Jeffrey B. Loeb
Rich May, A Professional Corporation
The Weld Building
176 Federal Street
Boston, MA 02110
(617) 556-3800
Fax : 617-556-3890
Email: jloeb@richmaylaw.com


                                              /s/ Gregory N. Blase
                                              Gregory N. Blase

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>FRANCIS WHRATEE NYEPON<br><br>Debtor. | Chapter 13<br>Case No.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br><br>Plaintiff,<br><br>v.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY CREDIT CORP.,<br>and AMC MORTGAGE SERVICES, INC.,<br><br>Defendants. | Adversary Proceeding No. 08-01109 |

## JOINT MOTION FOR
## CONTINUANCE OF PRE-TRIAL CONFERENCE

Pursuant to MLBR 5071-1 and 7016-1(b), defendants WM Specialty Mortgage, LLC,

Town and Country Credit Corp., and AMC Mortgage Services, Inc., and plaintiff Francis

Whratee Nyepon, respectfully request that the pre-trial conference currently scheduled for July

17, 2008, at 12:00 p.m., in the above adversary proceeding be continued for a period of

approximately 45 days to a date convenient for the Court.

As support for their motion, the parties state as follows:

1.      On or about April 21, 2008, plaintiff filed an adversary complaint ("Complaint")

against defendants.  Docket No. 1.

2.      On or about May 23, 2008, defendant WM Specialty Mortgage, LLC filed an

answer to the Complaint.  Docket No. 4.

3.      On or about June 6, 2008, defendants Town and Country Credit Corp. and AMC Mortgage Services, Inc. each filed answers to the Complaint.  Docket Nos. 12 and 13.

4.      On or about June 26, 2008, defendants Town and Country Credit Corp. and AMC Mortgage Services, Inc. each filed amended answers and counterclaims to the Complaint. Docket Nos. 19 and 20.

5.      On or about June 27, 2008, the Court issued a Notice of Pre-Trial Conference regarding a conference before the Court scheduled for July 17, 2008 at 12:00 p.m.

6.      To accommodate the parties' schedules, the parties jointly request that the pre-trial conference currently scheduled for July 17, 2008, be continued for a period of approximately 45 days to a date convenient for the Court.

## **RELIEF REQUESTED**

WHEREFORE, the parties respectfully request that the Court:

A.      Continue the pre-trial conference currently scheduled for July 17, 2008, at 12:00 p.m., in the above adversary proceeding for a period of approximately 45 days to a date convenient for the Court; and

B.      Grant such other relief as the Court deems just and proper.

WM SPECIALTY MORTGAGE, LLC

By its attorneys,


*/s/ Dudley Goar (with permission)*
Dudley Goar (BBO # 636689)
dudley@goar-law.com
91 Main Street , #206
Concord, MA 01742
978-369-1505

*/s/ Jeffrey B. Loeb (with permission)*
Jeffrey B. Loeb (BBO #546916)
jloeb@richmaylaw.com
Rich May, A Professional Corporation
The Weld Building
176 Federal Street
Boston, MA 02110
617-556-3800


FRANCIS WHRATEE NYEPON

By his attorney,


*/s/ Saul M. Ostroff (with permission)*
Saul M. Ostroff (BBO #380715)
ostrofflaw@aol.com
24 Union Avenue, Suite 6
Framingham, MA 01702
508-626-7600


Dated:  July 11, 2008

TOWN AND COUNTRY CREDIT CORP. and
AMC MORTGAGE SERVICES, INC.

By their attorneys,


*/s/ David D. Christensen*
R. Bruce Allensworth (BBO #015820)
bruce.allensworth@klgates.com
Andrew C. Glass (BBO #638362)
andrew.glass@klgates.com
Gregory N. Blase (BBO #662751)
gregory.blase@klgates.com
David D. Christensen (BBO #666401)
david.christensen@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-3100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and by first class mail on July 11, 2008 to:

Saul M. Ostroff, Esq.                           Dudley Goar
24 Union Avenue, Suite 6                        91 Main Street , #206
Framingham, MA 01702                            Concord, MA 01742
ostrofflaw@aol.com                              dudley@goar-law.com

Jeffrey B. Loeb
Rich May, A Professional Corporation
The Weld Building
176 Federal Street
Boston, MA 02110
jloeb@richmaylaw.com

                                                */s/ David D. Christensen*
                                                David D. Christensen

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>FRANCIS WHRATEE NYEPON,<br><br>       Debtor. | Chapter 13<br>Case No.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br><br>       Plaintiff,<br><br>v.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY CREDIT CORP.,<br>and AMC MORTGAGE SERVICES, INC.,<br><br>       Defendants. | Adversary Proceeding No. 08-01109 |

**ORDER ON JOINT MOTION FOR**
**CONTINUANCE OF PRE-TRIAL CONFERENCE**

UPON CONSIDERATION of the parties' Joint Motion for Continuance of Pre-Trial

Conference, it is hereby ORDERED that:

    1.    the parties' Joint Motion for Continuance is GRANTED; and

    2.    the pre-trial conference currently scheduled for July 17, 2008, is continued until

_____.

SO ORDERED this _____ day of _____, 2008.

_____
THE HONORABLE WILLIAM HILLMAN
UNITED STATES BANKRUPTCY COURT JUDGE

BOS-1222667 v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>FRANCIS WHRATEE NYEPON<br><br>                        Debtor. | Chapter 13<br>Case No.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br><br>                     Plaintiff,<br><br>v.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY CREDIT CORP.,<br>and AMC MORTGAGE SERVICES, INC.,<br><br>                  Defendants. | Adversary Proceeding No. 08-01109 |

## ASSENTED-TO MOTION FOR LEAVE TO AMEND ANSWER

Pursuant to Fed. R. Civ. P. 15(a)(2), as made applicable to this proceeding through Fed.

R. Bankr. P. 7015, defendant WM Specialty Mortgage, LLC ("WM Specialty") hereby moves

for leave to amend its answer to the Complaint filed by plaintiff Francis Whratee Nyepon

("plaintiff") in the above-captioned adversary proceeding.  WM Specialty's proposed Amended

Answer and Counterclaim is attached hereto as Exhibit A.  Plaintiff assents to this Motion.

In support of its Assented-to Motion, WM Specialty states as follows:

1.        On or about April 21, 2008, plaintiff filed an adversary complaint ("Complaint").

Docket No. 1.

2.      On or about May 23, 2008, WM Specialty filed – through attorney Jeffrey B. Loeb – an answer to the Complaint.  Docket No. 4.

3.      On or about June 6, 2008, defendants Town and Country Credit Corp. and AMC Mortgage Services, Inc. each filed answers to the Complaint.  Docket Nos. 12 and 13.

4.      On or about June 26, 2008, defendants Town and Country Credit Corp. and AMC Mortgage Services, Inc. each filed amended answers and counterclaims to the Complaint. Docket Nos. 19 and 20.

5.      On June 30 2008, the Multidistrict Litigation Panel issued a conditional order transferring this case to the multidistrict litigation styled In re Ameriquest Mortgage Company Mortgage Lending Practices Litigation, MDL 1715 (N.D. Ill.).  The transfer is expected to occur shortly but has not yet been effected.

6.      On or about July 25, 2008, attorneys from K&L Gates LLP filed notices of appearance on behalf of WM Specialty and previous counsel withdrew their appearances for WM Specialty.  See Docket Nos. 31-36.

7.      Because WM Specialty is now represented by new counsel, which counsel represents all three defendants in this action, WM Specialty moves for leave to amend its answer to better coordinate its defense with the other defendants.  WM Specialty has not previously filed a motion for leave to amend its answer.

8.      Leave to amend an answer should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Lackiram v. Montminy, Civ. A. No. 04-12592, 2006 WL 3469605, at *1 (D. Mass. Nov. 30, 2006) (granting motion for leave to amend answer).

9.      The Court's granting of this Motion will not result in any delay or prejudice to plaintiff.

10.     Plaintiff assents to this Motion.

WHEREFORE, defendant WM Specialty Mortgage, LLC respectfully requests that the

Court: (1) grant WM Specialty's Assented-to Motion for Leave to Amend Answer; (2) direct the

clerk to docket WM Specialty's proposed Amended Answer and Counterclaim attached hereto as

Exhibit A; and (3) order such other relief as the Court deems just and equitable.

Respectfully submitted by,

WM SPECIALTY MORTGAGE, LLC,
By its attorneys,


/s/ David D. Christensen
R. Bruce Allensworth (BBO #015820)
bruce.allensworth@klgates.com
Andrew C. Glass (BBO #638362)
andrew.glass@klgates.com
Gregory N. Blase (BBO #662751)
gregory.blase@klgates.com
David D. Christensen (BBO #666401)
david.christensen@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Dated:  August 5, 2008

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by first class mail on August 5, 2008 to:

Saul M. Ostroff, Esq.
24 Union Avenue, Suite 6
Framingham, MA 01702
ostrofflaw@aol.com

*/s/ David D. Christensen*
David D. Christensen

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>FRANCIS WHRATEE NYEPON<br><br>          Debtor. | Chapter 13<br>Case No.  07-14909-WH |
| FRANCIS WHRATEE NYEPON,<br><br>          Plaintiff,<br><br>v.<br><br>WM SPECIALTY MORTGAGE, LLC,<br>TOWN AND COUNTRY CREDIT CORP.,<br>and AMC MORTGAGE SERVICES, INC.,<br><br>          Defendants. | Adversary Proceeding No. 08-01109 |

**WM SPECIALTY MORTGAGE, LLC'S AMENDED**
**ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(2), as made applicable to this proceeding through Fed. R. Bankr. P. 7015, defendant WM Specialty Mortgage, LLC ("WM Specialty") hereby submits its Amended Answer and Counterclaim in response to the Complaint of plaintiff Francis Whratee Nyepon ("plaintiff" or "Nyepon").

Except as expressly admitted or denied herein below, WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations of each and every paragraph of the Complaint.

**I.    SUMMARY**

WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first through fourth sentences of the Summary of the

Complaint. The fifth sentence of the Summary of the Complaint consists of plaintiff's characterization of his case or legal conclusions to which no response is required. To the extent that a further response is required, WM Specialty denies those allegations set forth in the fifth sentence of the Summary of the Complaint that are directed toward WM Specialty and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the fifth sentence of the Summary of the Complaint.

## II.     PARTIES

1.      WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Section II of the Complaint.

2.      WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of Section II of the Complaint.

3.      WM Specialty admits that it is the current holder of plaintiff's mortgage loan note and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3 of Section II of the Complaint.

4.      WM Specialty admits, upon information and belief, that AMC Mortgage Services, Inc. ("AMC") has an address at 1100 Town and Country Road, Suite 1200, Orange, California 92868, but otherwise denies the allegations set forth in Paragraph 4 of Section II of the Complaint.

## III.     JURISDICTION

Nyepon's allegations as to the Court's jurisdiction consist of legal conclusions to which no response is required.

## IV.    FACTS

1.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Section IV of the Complaint.

2.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of Section IV of the Complaint.

3.    WM Specialty admits, upon information and belief, that the mortgage loan that is the subject of this lawsuit closed on or about September 21, 2004 (the "mortgage loan"), but otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of Section IV of the Complaint.

4.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of Section IV of the Complaint.

5.    WM Specialty states that the Note and Mortgage referenced in Paragraph 5 of Section IV of the Complaint speak for themselves as to their content, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of Section IV of the Complaint.

6.    WM Specialty states that the Note referenced in Paragraph 6 of Section IV of the Complaint speaks for itself as to its content.

7.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of Section IV of the Complaint.

8.    WM Specialty states that the requisite disclosures were provided in connection with the mortgage loan, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of Section IV of the Complaint.

9.      WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of Section IV of the Complaint.

10.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of Section IV of the Complaint.

11.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of Section IV of the Complaint.

12.     WM Specialty denies the allegations set forth in Paragraph 12 of Section IV of the Complaint.

13.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of Section IV of the Complaint.

14.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of Section IV of the Complaint.

15.     WM Specialty states that the Note referenced in Paragraph 15 of Section IV of the Complaint speaks for itself as to its content.

16.     WM Specialty states that the assignment on file with the Registry of Deeds at Book 39954, Page 322 speaks for itself as to its content.

17.     WM Specialty denies that the terms of the mortgage loan were not disclosed to Nyepon and otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of Section IV of the Complaint.

18.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of Section IV of the Complaint.

19.     WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of Section IV of the Complaint.

## COUNT I
### (Violation of Chapter 93A)

20.    WM Specialty repeats and realleges its prior responses as if fully set forth herein.

21.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint.

22.    WM Specialty denies the allegations set forth in Paragraph 22 of the Complaint.

23.    WM Specialty denies the allegations set forth in Paragraph 23 of the Complaint.

24.    WM Specialty denies the allegations set forth in Paragraph 24 of the Complaint.

25.    WM Specialty denies the allegations set forth in Paragraph 25 of the Complaint.

26.    WM Specialty denies the allegations set forth in Paragraph 26 of the Complaint.

27.    WM Specialty denies the allegations set forth in Paragraph 27 of the Complaint.

28.    WM Specialty is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint.

29.    WM Specialty denies the allegations set forth in Paragraph 29 of the Complaint.

The remainder of Count I of the Complaint contains a prayer for relief to which WM Specialty is not required to respond.  To the extent that a further response is required, WM Specialty denies that Nyepon is entitled to any of the forms of relief requested.

## COUNT II
### (Truth in Lending Action and/or MCCDA Violations)

30.    WM Specialty repeats and realleges its prior responses as if fully set forth herein.

31.    WM Specialty denies the allegations set forth in Paragraph 31 of the Complaint.

32.    WM Specialty denies the allegations set forth in Paragraph 32 of the Complaint.

5

The remainder of Count II of the Complaint contains a prayer for relief to which WM Specialty is not required to respond.  To the extent that a further response is required, WM Specialty denies that Nyepon is entitled to any of the forms of relief requested.

## COUNT III
### (Objection to Proof of Claim)

33.    WM Specialty repeats and realleges its prior responses as if fully set forth herein.

34.    WM Specialty denies the allegations set forth in Paragraph 34 of the Complaint.

The remainder of Count III of the Complaint contains a prayer for relief to which WM Specialty is not required to respond.  To the extent that a further response is required, WM Specialty denies that Nyepon is entitled to any of the forms of relief requested.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim upon which relief may be granted against WM Specialty.

2.    Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to state his claims with sufficient particularity.

3.    Plaintiff's claims are barred, in whole or in part, by application of the doctrines of waiver, ratification, and estoppel.

4.    Plaintiff's claims may be barred, in whole or in part, by application of the doctrine of release because, among other things, he may be a member of a prior settlement or class that released some or all claims alleged by plaintiff.

5.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

6.    Plaintiff's claims are barred, in whole or in part, because he has failed to mitigate his alleged damages.

7. Plaintiff's claims are barred, in whole or in part, because any alleged acts or failures to act on the part of WM Specialty were excused by the actions of plaintiff or others.

8. If plaintiff suffered an injury, which WM Specialty denies, such injury was caused by the conduct of others for whose conduct WM Specialty is not responsible.

9. Plaintiff's claims are barred, in whole or in part, on the ground that if plaintiff was damaged or a statute was violated in any manner whatsoever, such damage or violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not WM Specialty, and any such intervening or superseding action of said parties and/or persons or entities bars plaintiff's recovery.

10. Plaintiff by his knowledge, statements, and/or conduct, has consented and/or acquiesced to the alleged acts and/or omissions of WM Specialty described in the Complaint.

11. Plaintiff's claims are barred, in whole or in part, because plaintiff would be unjustly enriched if allowed to recover on the Complaint.

12. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations or by application of the doctrine of laches.

13. Plaintiff has failed to join an indispensable party.

14. Plaintiff's claims are barred, in whole or in part, because plaintiff lacks standing as to some or all of the claims in the Complaint.

15. Plaintiff's claims are barred, in whole or in part, because plaintiff has failed to meet the jurisdictional prerequisites for maintaining a claim under Mass. Gen. Laws ch. 93A.

16. WM Specialty is not liable for any claims by plaintiff because WM Specialty's conduct at all times complied with and was made in good faith conformity with all applicable contracts, covenants, laws, rules, regulations, and statutes.

17.    Any alleged violation by WM Specialty was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

18.    WM Specialty states that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated affirmative defenses.  WM Specialty reserves its right to file an amended Answer asserting additional defenses, and/or to file a counter- or cross-complaint in the event that discovery indicates either is appropriate.

### PRAYER

WHEREFORE, defendant WM Specialty Mortgage, LLC respectfully requests that plaintiff's Complaint be dismissed with prejudice, that the Court enter judgment in WM Specialty's favor on all counts of the Complaint, that WM Specialty be awarded its costs and expenses, including attorneys' fees, incurred in this action, and that the Court grant such other relief as the Court deems just and proper.

### COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, as made applicable to this proceeding through Fed. R. Bankr. P. 7013, defendant/counterclaimant WM Specialty Mortgage, LLC ("WM Specialty") hereby brings this Counterclaim against plaintiff/defendant-in-counterclaim Francis Whratee Nyepon ("Nyepon") and states:

1.    The mortgage loan that is the subject of this lawsuit closed, upon information and belief, on or about September 21, 2004 (the "mortgage loan").  The mortgage loan is secured by property located at 29-31 Mather Street, Boston, Massachusetts 02124.

2.    WM Specialty is the current holder of plaintiff's mortgage loan note.

3.      On April 21, 2008, Nyepon filed a Complaint (the "Complaint") (Adversary Proceeding No. 08-01109) against Town and Country Credit Corporation, WM Specialty Mortgage, LLC, and AMC Mortgage Services, Inc., alleging violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") and objecting to the Proof of Claim that was filed in Nyepon's underlying Chapter 13 bankruptcy proceeding.  Nyepon further alleges that he did not receive a copy of the purported three-day right of rescission notice, an alleged failure for which Nyepon appears to seek rescission of the mortgage loan under the federal Truth in Lending Act ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA").

4.      Nyepon's claims are without merit, and he is not entitled to rescind the mortgage loan under any statute or regulation, including, without limitation, Chapter 93A, TILA, or the CCCDA.

## COUNT I - DECLARATORY JUDGMENT PURSUANT TO DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

5.      WM Specialty repeats and realleges the allegations set forth in the preceding paragraphs as if fully restated herein.

6.      By virtue of Nyepon's Complaint, an actual controversy has arisen and exists between WM Specialty and Nyepon regarding whether he has a right to rescind the mortgage loan under Chapter 93A, TILA, the CCCDA, or any other statute or regulation.

7.      Nyepon alleges that WM Specialty failed to allow Nyepon a purported three-day right to rescind the mortgage loan.

8.      Nyepon has no basis for rescission of the mortgage loan.

9.      WM Specialty hereby seeks a declaration of the rights, duties, and liabilities of the parties with respect to Nyepon's Complaint concerning rescission of the mortgage loan, including, without limitation, a declaration that Nyepon is not entitled to rescind the mortgage

loan, that WM Specialty had no duty to provide a notice of right to rescind the mortgage loan, and that WM Specialty has no duty to effect a rescission of the mortgage loan.

## **RELIEF REQUESTED**

WHEREFORE, defendant/counterclaimant WM Specialty Mortgage, LLC respectfully requests that the Court:

A.      Enter a declaration that plaintiff/defendant-in-counterclaim is not entitled to rescind the mortgage loan, that WM Specialty had no duty to provide a notice of right to rescind the mortgage loan, and that WM Specialty has no duty to effect a rescission of the mortgage loan, or alternatively, that any such rescission should require a simultaneous exchange of monies and property by the parties, including those monies or property held by the current noteholder, through escrow; and

B.      Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

WM SPECIALTY MORTGAGE, LLC

By its attorneys,


/s/ David D. Christensen
R. Bruce Allensworth (BBO #015820)
bruce.allensworth@klgates.com
Andrew C. Glass (BBO #638362)
andrew.glass@klgates.com
Gregory N. Blase (BBO #662751)
gregory.blase@klgates.com
David D. Christensen (BBO #666401)
david.christensen@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Dated: August 5, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and by first class mail to:

Saul M. Ostroff, Esq.
24 Union Avenue, Suite 6
Framingham, MA 01702

/s/ David D. Christensen
David D. Christensen